**Lenieta Wylene TROUSDALE,**
**Appellant**

v.

**Annette M. HENRY, R. Christopher Bell, and Bell & Henry, L.L.P.,**
**Appellees.**

No. 14–06–00848–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 24, 2008.

Wayne H. Paris, Houston, for appellant.

Mark Allen Waite, Michael A. Moriarty, Annette M. Henry, Edward J. Murphy, Tracy Allen Phillips, James Emery Rogers, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and GUZMAN.

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

Lenieta Wylene Trousdale ("Trousdale") appeals from the trial court's order granting summary judgment in favor of appellees, Annette M. Henry, R. Christopher Bell, and Bell & Henry, L.L.P. In three issues, Trousdale contends the trial court erred in its grant of summary judgment and its dismissal of her claims with prejudice, because (1) certain of appellees' actions constitute a breach of fiduciary duty, to which a four-year statute of limitations applies; (2) the non-fracturing rule does not apply to the facts of this case, as claims for breach of fiduciary duty are not limited to instances of self-dealing by attorneys; and (3) the fraudulent concealment doctrine tolled the commencement of the two-year statute of limitations on her legal malpractice claims until August or September 2005, when appellees returned her file to her.

We conclude that the trial court erred in applying the two-year statute of limitations to Trousdale's breach of fiduciary duty claims. However, we also conclude that neither the discovery rule nor the fraudulent concealment doctrine tolled the running of the statute of limitations on Trousdale's legal malpractice claims until August or September 2005. As a result of these holdings, we reverse that portion of the trial court's order granting summary judgment on Trousdale's breach of fiduciary duty claims and affirm the summary judgment as to the legal malpractice claims.

## Factual and Procedural Background

Because we are reviewing a summary judgment, we present the facts in the light most favorable to Trousdale, the non-movant. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In October 1998, following the death of her father, Trousdale retained Annette M. Henry ("Henry"), R. Christopher Bell ("Bell"), and their law firm, Bell & Henry, L.L.P., to represent her and the estate of her father in two lawsuits filed in Liberty County, Texas. The first was a probate action to have Trousdale appointed representative of her father's estate ("the probate action"). The second was a fraud and conversion action filed against Ellen Ayres, her half-sister, in district court ("the district court action"). According to the parties, the probate action was dismissed on September 27, 2002 for want of prosecution, and the district court action was dismissed on October 16, 2002, also for want of prosecution.

This appeal involves the manner and timing of Trousdale's discovery that these two lawsuits had been dismissed. With respect to the probate action, Trousdale alleges that Henry promised her in April 2001 that she would keep her apprised of an upcoming hearing in the probate court. After failing to receive any notification re-

garding the lawsuit, Trousdale telephoned Henry in December 2002 to inquire as to its status. However, instead of speaking directly with Henry herself, Trousdale spoke with a member of Henry's staff, who informed her that she would have Henry return her telephone call. When Henry failed to do so, Trousdale called Henry's office three times. During the second call, occurring sometime in January 2003, Henry merely informed Trousdale, "we missed it," without further explanation as to whether it was a hearing that had been missed, or whether the probate action itself had been dismissed. Trousdale then asked Henry to reschedule the probate hearing, to which Henry did not respond. Later that month, Trousdale called Henry a third time and again asked Henry to reschedule the probate hearing, whereupon Henry hung up on her. In a later conversation, Trousdale requested that Henry return her file. Henry told her that her case had been "sealed," and said that, for this reason, she could obtain her file from neither her nor the Liberty County courthouse. Henry further informed Trousdale that she would need a probate attorney to further pursue the matter.

With respect to the district court action, Trousdale alleges that she never inquired, and was never informed, as to its status. She also claims that Henry never informed her that anything had been "missed" on the district court action during their telephone conversations, much less that the district court action had been dismissed.

In sum, Trousdale asserts that appellees never informed her that either lawsuit had been dismissed. As a result, she clams she did not learn that either the probate action or the district court action had been dismissed until August–September 2005, when appellees finally returned her file to her.

On December 30, 2005, Trousdale sued appellees for legal malpractice and breach of fiduciary duties. She alleged that appellees (1) failed to appear at trial settings in September and October of 2002, which resulted in the dismissal of her claims for want of prosecution; (2) failed to disclose to her that her claims were dismissed, after she had paid them for their services and expenses; and (3) intentionally refused to return her files to her until September 2005, to conceal the fact that her claims had been dismissed and were time-barred. Trousdale later amended her petition as follows: (1) adding a claim that appellees were negligent in their failure to timely take any action to have her cases reinstated upon learning of their dismissal; (2) adding a claim that the discovery rule and the fraudulent concealment doctrine tolled the statute of limitations on her legal malpractice claims until appellees returned her files in September 2005; and (3) stating her legal malpractice and breach of fiduciary duty claims in separate sections.

Appellees filed a joint motion for summary judgment. Stating that Trousdale's sole claims of wrongdoing related to missed hearing/trial settings, appellees contended that Trousdale's claims amounted to nothing more than a claim for legal malpractice, subject to a two-year statute of limitations. Appellees further asserted that neither the discovery rule nor the fraudulent concealment doctrine tolled limitations until September 2005, as Trousdale admitted knowledge of and intent to sue on her cause of action in June 2003.[1] Because they claimed limitations had run in June 2005, and Trousdale did not file

1. Appellees attached to their joint motion for summary judgment a copy of a facsimile transmission from Trousdale to J.D. Johnson, Trousdale's prospective attorney, dated June 17, 2003. In this transmission, titled "Explanation and Facts For Lawsuit," Trousdale re-

suit until December 2005, appellees sought dismissal of Trousdale's claims with prejudice.

In her response, Trousdale argued that she timely filed suit against appellees. She contended that her breach of fiduciary duty claims were controlled by a four-year statute of limitations, making those claims timely. She acknowledged that her legal malpractice claims were governed by a two-year statute of limitations, but asserted that the discovery rule and the fraudulent concealment doctrine tolled the running of limitations on those claims. With respect to the former, Trousdale attached to her response an affidavit in which she averred, "The first time I realized I had a risk of harm was in August or September 2005 when I saw this in the file I had been given." In their reply, appellees objected that Trousdale's affidavit amounted to a "sham affidavit," because it materially contradicted her sworn deposition testimony. Appellees requested that the trial court strike certain portions of the affidavit, including the above-quoted statement.

The trial court granted appellee's motion for summary judgment, and ordered Trousdale's claims dismissed with prejudice. In its order, the trial court further sustained appellees' objection to Trousdale's affidavit, and struck the statement, "The first time I realized I had a risk of harm was in August or September 2005 when I saw this in the file I had been given," from the affidavit. This appeal followed.

### Issues on Appeal

In three issues, Trousdale contends that the trial court erred in granting summary judgment in favor of appellees. In her first issue, Trousdale asserts that her claims for breach of fiduciary duties were timely filed, as they are separate and independent from her claims for legal malpractice, and subject to a four-year statute of limitations. In her second issue, she argues that the non-fracturing rule cannot be applied on the facts of this case, as claims for breach of fiduciary duties are not limited solely to instances of self-dealing by attorneys. In her final issue, Trousdale contends that she timely filed her legal malpractice claims, as the fraudulent concealment doctrine tolled the running of limitations until appellees returned her file in August–September 2005. She further argues that the trial court erred in sustaining appellee's objection to her affidavit and striking a statement from that affidavit. We will address Trousdale's first and second issues together, because they are related.

### Standard of Review

█ We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex.2004). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Aguirre v. Vasquez*, 225 S.W.3d 744, 750 (Tex.App.-Houston [14th Dist.] 2007, no pet.). A defendant moving for summary judgment must conclusively

counted the events leading to the lawsuits filed in Liberty County, and summarized the actions taken and representations made by Henry in her legal representation of Trousdale. At the conclusion of the transmission, Trousdale notes, "I want to sue her for my inheritance and goods in apartment. P.S. I

must file a lawsuit—It is not an option not to file against Annette Henry and her office. Everything I have worked for is gone—Even my inheritance." Appellees contend that this statement confirms that Trousdale knew of the facts supporting her claims by June 2003, at the latest.

negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Shirvanian v. DeFrates*, 161 S.W.3d 102, 106 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe*, 145 S.W.3d at 157; *Aguirre*, 225 S.W.3d at 750.

## Analysis of Trousdale's Issues

**A. The trial court improperly granted summary judgment on Trousdale's breach of fiduciary duty claims.**

### 1. The non-fracturing rule.

In her second issue, Trousdale contends that the non-fracturing rule does not apply to this case. She argues that the trial court followed a more restrictive standard in evaluating her breach of fiduciary duty claims than that announced by this Court in *Goffney v. Rabson*, 56 S.W.3d 186, 193–94 (Tex.App.-Houston [14th Dist.] 2001, pet. denied), and followed in our subsequent decisions. *See McMahan v. Greenwood*, 108 S.W.3d 467, 495–96 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189–90 (Tex.App.-Houston [14th Dist.] 2002, no pet.). In contrast, appellees contend that the non-fracturing rule was properly applied by the trial court below. Appellees assert that Trousdale's claims amount to nothing more than a recast legal malpractice claim, as they merely consist of allegations that appellees failed to keep Trousdale adequately informed while she continued to pay them for their legal services. Appellees argue that this is not the law in Texas, and contend that if such allegations are construed as claims for breach of fiduciary duty, then any alleged malpractice could be turned into a breach of fiduciary duty simply by paying one's bills. They further argue that the focus of a claim for breach of fiduciary duty is whether an attorney obtained an improper benefit from representing a client, and cite *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex.App.-Fort Worth 2002, pet. denied), and *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex.App.-San Antonio 2003, pet. denied), for this proposition.

■ The rule against dividing or fracturing a negligence claim prevents legal malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims. *Deutsch*, 97 S.W.3d at 189 (citing *Goffney*, 56 S.W.3d at 188–94). However, this is not to say that clients can sue their attorneys only for negligence. *Id.* As this Court has explained before, analysis of claims in light of the non-fracturing rule is analogous to determining whether claims are contract or DTPA claims or whether they sound in contract or tort. *Id.* (citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13–15 (Tex. 1996); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 493–95 (Tex.1991)).

■ In a legal malpractice claim, a plaintiff must prove that (1) the attorney owed the plaintiff a duty, (2) the duty was breached, (3) the breach proximately caused the plaintiff's injuries, and (4) the plaintiff incurred damages. *See McMahan*, 108 S.W.3d at 495 (citing *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995)). Attorneys may also be held liable for a breach of fiduciary duty, but such a claim requires allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action. *Id.* (citing *Goffney*, 56 S.W.3d at 193–94). If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that

complaint should be pursued as a negligence claim, rather than some other claim. *Deutsch,* 97 S.W.3d at 189 (citing *Goffney,* 56 S.W.3d at 190–94). If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence. *Id.*

■ This Court subscribes to the rule that a separate cause of action for breach of fiduciary duty exists if the allegations in the petition allege self-dealing, deception, or misrepresentations in the attorney's legal representation of the client. *Goffney,* 56 S.W.3d at 194.[2] We have never held that self-dealing, deception, *and* misrepresentation must all be present in order for a breach of fiduciary duty claim to stand; rather, we stated that the allegations in support of a breach of fiduciary duty claim must simply go beyond the mere negligence allegations in a malpractice action. *McMahan,* 108 S.W.3d at 495.

### 2. Trousdale alleged breach of fiduciary duty claims that are separate from her negligence claims.

**2.** Although appellees claim that self-dealing, deception, and misrepresentation must all be present for a breach of fiduciary duty claim to stand, our cases hold differently. *See Goffney,* 56 S.W.3d at 193–94; *Deutsch,* 97 S.W.3d at 189; *McMahan,* 108 S.W.3d at 495. In addition, in a non-lawyer breach of fiduciary duty setting, Texas courts have never held that all three must be present. *See W. Reserve Life Assurance Co. of Ohio v. Graben,* 233 S.W.3d 360, 374 (Tex.App.-Fort Worth 2007, no pet.) (explaining that a financial adviser breaches the fiduciary duties owed to his client when he (1) fails to put his client's interests above his own; (2) treats his clients unfairly; (3) fails to make reasonable use of the confidence his clients place in him; (4) fails to act in the utmost good faith and fails to exercise the most scrupulous honesty toward his clients; *or* (5) fails to fully and fairly disclose all important information to his clients concerning a transaction); *Dunnagan v. Watson,* 204 S.W.3d 30, 46 (Tex.App.-Fort Worth 2006, pet. denied) (stating that a limited partner breaches the fiduciary duties owed to the limited partnership when he (1) enters into a transaction that is not fair and equitable to the limited partnership; (2) fails to act in the utmost good faith and fails to exercise the most scrupulous honesty toward the limited partnership; (3) places his own interest before the limited partnership's interests; (4) uses his position to gain any benefit for himself at the expense of the limited partnership; *or* (5) he places himself in a position where his self-interest might conflict with his obligations as a fiduciary); *Abetter Trucking Co. v. Arizpe,* 113 S.W.3d 503, 510 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (explaining that an employee breaches the fiduciary duties owed to his employer when he (1) competes with his employer on his own account in matters relating to the subject matter of his employment; (2) fails to deal fairly and openly with his employer in all transactions between them; (3) fails to fully disclose to his employer information about matters affecting the company's business; *or* (4) uses his position to gain a business opportunity belonging to his employer); *Lesikar v. Rappeport,* 33 S.W.3d 282, 296–97 (Tex.App.-Texarkana 2000, pet. denied) (explaining that the executrix of an estate breaches the fiduciary duties owed to the estate beneficiaries when she (1) violates her duty of good faith and candor to the beneficiaries; (2) fails to fully disclose to the beneficiaries matters affecting the beneficiaries' interests; (3) uses the advantage of her position to gain any benefit for herself at the expense of the estate; (4) places herself in any position where her self-interest will or may conflict with her obligations as executrix; *or* (5) makes a profit out of the estate); *NRC, Inc. v. Huddleston,* 886 S.W.2d 526, 530 (Tex. App.-Austin 1994, no writ) (stating that a real estate agent breaches the fiduciary duties owed to his client when he (1) violates his duty of good faith and candor; (2) fails to fully disclose to the client respecting matters affecting the client's interests; *or* (3) uses the relationship to benefit his personal interest); *see also Burrow v. Arce,* 997 S.W.2d 229, 237–40 (Tex.1999) (consulting agency law and non-lawyer breach of fiduciary duty cases to determine not only the bounds of the fiduciary duty owed by lawyers but also to determine whether economic harm was necessary before a client could sue). As a result, we decline to adopt a more stringent standard.

In her first issue, Trousdale contends that her breach of fiduciary duty claims were timely filed, as they are separate and independent from her claims for legal malpractice, and subject to a four-year statute of limitations. Specifically, she asserts that appellees misrepresented the status of the probate action and the reason her file could not be returned to her, while appellees (1) knew and failed to disclose that her cases had been dismissed for want of prosecution; (2) continued to bill and collect fees from her; and (3) refused to return her file. She claims that these actions constitute a breach of the fiduciary duties owed to her. She further argues that these claims are subject to a four-year statute of limitations, which had not run as of the date she filed suit.

We agree with Trousdale that her claims for breach of fiduciary duties are separate and independent from her legal malpractice claims, and that they were timely filed.

In Texas, a fiduciary relationship exists between attorneys and clients as a matter of law. *Goffney*, 56 S.W.3d at 193. The Texas Supreme Court has noted that the term fiduciary "refers to integrity and fidelity" and "contemplates fair dealing and good faith ... as the basis of the transaction." *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 512 (1942). To this end, the attorney-client relationship is one of "'most abundant good faith,'" requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception. *Goffney*, 56 S.W.3d at 193 (quoting *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 263–66 (Tex.App.-Corpus Christi 1991, writ denied)). As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation. *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988). However, this duty to inform does not extend to matters beyond the scope of representation. *Joe*, 145 S.W.3d at 159–60.

This Court has previously examined breach of fiduciary duty claims asserted by clients against their former attorneys. *See, e.g., Goffney*, 56 S.W.3d at 194; *Deutsch*, 97 S.W.3d at 189; *McMahan*, 108 S.W.3d at 477. In *Goffney*, a client sued her former attorney for legal malpractice, breach of contract, DTPA violations, and breach of fiduciary duty. *Goffney*, 56 S.W.3d at 188. The client later amended her petition to drop her legal malpractice claim, and proceeded to trial on her breach of contract, DTPA, and breach of fiduciary duty claims. *Id.* at 189. In support of those claims, the client generally alleged that the attorney (1) did not properly prepare the lawsuit for trial; (2) failed to respond to special exceptions, which pointed out defects in her pleadings; and (3) failed to provide timely supplemental answers to interrogatories, thereby precluding the attorney from calling crucial witnesses. *Id.* at 190–91. With respect to her breach of fiduciary duty claim, the client alleged that the attorney (1) abandoned her at trial; (2) did not properly prepare the lawsuit for trial; and (3) misled the client into believing the case had been properly prepared for trial. *Id.* at 193.

The jury found in favor of the client on all her claims, the trial court entered judgment substantially in accordance with the verdict, and the attorney appealed. *Id.* at 189–90. In reversing the trial court's judgment, we held that the client's breach of contract, DTPA, and breach of fiduciary duty claims were essentially legal malpractice claims. *Id.* at 190. Because the client had abandoned her legal malpractice claims before trial, we held that she could not recover on other causes of action which amounted to nothing more than restated claims for legal malpractice. *Id.*

With respect to the breach of fiduciary duty claim, we noted that the client's allegations were the same as those made in support of her breach of contract and DTPA claims. *Id.* at 193. We concluded that these allegations constituted nothing more than a claim for legal malpractice, and that they did not support a separate cause of action for breach of fiduciary duty. *Id.* at 194. However, in our discussion of the latter, we explained:

> Breach of fiduciary duty by an attorney most often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations.

*Id.* at 193. Because the client's allegations did not amount to self-dealing, deception, or misrepresentations in the attorney's legal representation of the client, we concluded that they did not support a separate cause of action for breach of fiduciary duty. *Id.* at 194. We have since applied this standard for evaluating breach of fiduciary duty claims in light of the non-fracturing rule in several instances. *See Deutsch*, 97 S.W.3d at 189–90; *McMahan*, 108 S.W.3d at 495–96.

In *Deutsch*, a law firm sued its former client to recover unpaid legal fees. *Deutsch*, 97 S.W.3d at 184. The client counterclaimed, asserting claims for negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, DTPA violations, and fraud against the law firm and the individual attorney who handled the file. *Id.* At the close of all the evidence at trial, the law firm moved for a directed verdict. *Id.* The law firm argued, and the trial court agreed, that the client's allegations had impermissibly fractured his negligence claim, and that the

statute of limitations barred all of the client's claims except for his negligence claim. *Id.* at 184–85, 189. The trial court then submitted the case to the jury, which found that the client's own negligence caused his injuries. *Id.* at 185. The jury awarded the law firm the full amount of its unpaid bills, plus the attorney's fees incurred in bringing the collection suit. *Id.* The client appealed. *Id.*

In reversing the trial court's judgment, we undertook an extensive examination of the fifteen allegations made in support of the client's breach of fiduciary duty claim. *Id.* at 187–91. We concluded that the gist of ten of the fifteen allegations was that the law firm did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, and therefore those allegations should be pursued only as a negligence claim. *Id.* at 189–90. However, we further concluded that three of the client's allegations, namely that the law firm (1) failed to counsel and advise the client about the conflicts of interest which arose during the law firm's representation of the client; (2) failed to withdraw from the representation of the client once the conflicts arose; and (3) failed to advise the client to retain separate counsel in light of the law firm's conflicts of interest in representing the client, were appropriately classified as a breach of fiduciary duty claim independent of the client's negligence claim. *Id.* at 187, 190. The gist of these complaints was not that the law firm failed to exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess. *Id.* at 190. Rather, as we stated in *Goffney*, these allegations were of the type that supported a cause of action for breach of fiduciary duty separate and independent from a claim for legal malpractice. *Id.* at 189 (citing *Goffney*, 56 S.W.3d at 190–94).

Finally, in *McMahan*, a client sued his former business associates and his former attorney for, among other things, fraud, fraudulent inducement, breach of fiduciary duty, and legal malpractice. *McMahan*, 108 S.W.3d at 477. Specifically, the client alleged that the attorney gave him false information and advice regarding the client's stock ownership in a business entity he formed with the other defendants, and that the attorney falsely told him he was a shareholder of the business entity in order to induce him into contributing assets to the company. *Id.* at 476, 495–96. The client further alleged that the attorney failed to correct the misrepresentation prior to the client's execution of a settlement agreement with the other defendants, and that because the attorney gave him this false information and advice, he continued to transfer assets to the company and later signed the settlement agreement, rather than attempting to recover the full value of the assets he contributed. *Id.* at 496. The defendants pleaded numerous affirmative defenses, including release, ratification, and limitations, and the attorney moved for summary judgment on traditional and no-evidence grounds. *Id.* at 477. The trial court granted the attorney's motions for summary judgment, but did not specify the grounds upon which the motions were granted. *Id.* The client appealed.

 In our examination of the client's claims against the attorney, we found that the client had presented more than a scintilla of evidence that the attorney made material misrepresentations to the client, that he had a duty to disclose the client's lack of stock ownership, and that the client justifiably relied on his representations. *Id.* at 495. We therefore concluded that the client's fraud and fraudulent inducement causes of action survived the attorney's no-evidence motion for summary judgment. *Id.* We similarly concluded that the client's legal malpractice and breach of fiduciary duty claims survived the attorney's motion for summary judgment. *Id.* at 496. The attorney did not argue that the non-fracturing rule barred the independent assertion of claims of breach of fiduciary duty; rather, the attorney merely argued that there was no evidence of an attorney-client relationship between himself and the client at the time the settlement agreement was executed. *Id.* at 495–96. We determined that the attorney had not sufficiently refuted the existence of an attorney-client relationship during the period surrounding the formation of the business entity, and stated that, contrary to the attorney's position, Texas law requires an attorney who has made misstatements to a client to make a full disclosure of the truth.[3] *Id.* at 496 (citing *Willis*, 760 S.W.2d at 645; *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212–13 (Tex.App.-Houston [14th Dist.] 2001, pet. denied)).

---

**3.** While *McMahan* does not expressly address the non-fracturing rule, that opinion is noteworthy for our recitation of the standard that governs our analysis of causes of action in light of that rule. *See McMahan*, 108 S.W.3d at 495–96. There, we stated:

Attorneys may be liable for a breach of fiduciary duty, but such a claim requires allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action. If the gist of the client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. If, however, the client's complaint is more appropriately classified as a fraud, DTPA, breach of fiduciary duty, or breach of contract complaint, then the client can assert a claim other than negligence.

*Id.* (internal citations omitted).

As noted above, we have explained that breach of fiduciary duty by an attorney often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations. *See Goffney*, 56 S.W.3d at 194; *see also McMahan*, 108 S.W.3d at 495; *Deutsch*, 97 S.W.3d at 190. We have further explained that, in order to support a cause of action for breach of fiduciary duty separate and apart from a claim for legal malpractice, the allegations in the petition must amount to self-dealing, deception, or misrepresentations in the representation of the plaintiff that go beyond the mere negligence allegations in a legal malpractice action. *McMahan*, 108 S.W.3d at 495; *Goffney*, 56 S.W.3d at 194; *see also Deutsch*, 97 S.W.3d at 190.

Here, Trousdale asserted claims for legal malpractice and breach of fiduciary duties. Trousdale alleged that appellees committed malpractice when they failed to (1) appear at trial settings in September–October 2002, which resulted in the dismissal of her cases for want of prosecution; and (2) take any action to request the Liberty County courts to reinstate her cases after their dismissal. The gist of these complaints is that appellees did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, and these claims were properly pursued as claims for legal malpractice. *See McMahan*, 108 S.W.3d at 495.

However, in her petition, Trousdale also alleged the following additional failings by appellees:

- Henry only told her that they "missed it," referring to a hearing that was scheduled, not that the case has been dismissed;

- They failed to disclose the dismissal of her claims to her;

- They continued to demand and accept payment for their services, even after her cases were dismissed and Henry refused to speak with her;

- They misrepresented to her that her cases could not be rescheduled, and that she could not obtain copies of pleadings and orders, because the files were "sealed"; and

- They intentionally refused to return her files to her to conceal that her cases had been dismissed and were time-barred.

These allegations go beyond the mere negligence allegations in a legal malpractice action. They involve allegations of deception and misrepresentations committed by appellees while they represented Trousdale and while they still owed her duties. *See id.*

If Trousdale had alleged only that appellees negligently allowed the Liberty County lawsuits to be dismissed for want of prosecution, her claims would amount only to one for legal malpractice. *See Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex.1998) (distinguishing between legal malpractice claims and claims for violation of the DTPA); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 482–83 (Tex.App.-Dallas 1995, writ denied) (distinguishing between legal malpractice claims and claims for fraudulent billing practices); *Jampole v. Matthews*, 857 S.W.2d 57, 62 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (same). But, that is not what she alleged in her breach of fiduciary duty cause of action. She alleged more, as we have listed above: when Trousdale called about a hearing in the probate action, Henry stated only that a hearing had been missed, not that the cases were dismissed; Henry told her she

could not get copies of her file because the files were sealed; and the firm refused to return her files for almost two years after she asked for their return, and they did this to conceal that both the probate action and the district court action were dismissed. *See Latham,* 972 S.W.2d at 69. Construing these facts and allegations in the light most favorable to Trousdale, we conclude that her claims for breach of fiduciary duty are separate and independent from her claims for legal malpractice.

**3. Trousdale's breach of fiduciary duty claims were timely filed.**

 To be considered timely, claims for breach of fiduciary duty must be filed within four years of the date the cause of action accrues. TEX. CIV. PRAC. & REM.CODE § 16.004(a)(5). Generally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998).

Trousdale filed suit in December 2005. She alleges that appellees breached the fiduciary duties owed to her, and therefore her cause of action accrued, in December 2002 and January 2003. While appellees do not deny that the acts constituting the alleged breach were committed during this time frame, they contend that Trousdale knew of her alleged injury, at the very latest, in June 2003.

Assuming without deciding that Trousdale's cause of action for breach of fiduciary duty accrued as early as December 2002—on Trousdale's first conversation with Henry—Trousdale filed suit on her breach of fiduciary duty claims within the four-year statute of limitations by filing in December 2005.

In short, we hold that the trial court erred in granting appellees' motion for summary judgment on Trousdale's claims for breach of fiduciary duty based on appellees' statute of limitations defense. Therefore, we sustain Trousdale's first and second issues.

**B. Trousdale's legal malpractice claims are time-barred.**

In her third issue, Trousdale contends that she timely filed her legal malpractice claims. Although these claims are subject to a two-year statute of limitations, she maintains that the fraudulent concealment doctrine tolled the running of limitations until appellees returned her file in August or September 2005. She asserts that a breach of the duty to disclose is tantamount to concealment, and reasons that appellees' failure to disclose the dismissal of the Liberty County lawsuits, coupled with appellees' refusal to return her file until August or September 2005, should result in the tolling of limitations until that time.

Trousdale further contends that the trial court erred in sustaining appellee's objection to her affidavit and striking a statement from that affidavit, as the statement did not conflict with her earlier deposition testimony. She argues that even if there is a slight conflict between the two, a genuine issue of material fact exists that precludes summary judgment on when she discovered or should have discovered her cause of action.

In contrast, appellees contend that neither the fraudulent concealment doctrine nor the discovery rule tolled limitations on Trousdale's legal malpractice claims until August or September 2005. They assert that Trousdale admitted knowledge of, and intent to sue for, her claims in June 2003, and that Trousdale was even aware of the full extent of her injuries by that time. Appellees therefore argue that the tolling effect of the discovery rule and the fraudu-

lent concealment doctrine terminated, and the statute of limitations on Trousdale's legal malpractice claims began to run, as of June 2003. Appellees further contend that the trial court did not abuse its discretion in striking a statement from Trousdale's affidavit, as that statement materially contradicted her earlier deposition testimony and handwritten notes, and merely represented an attempt to create a fact issue to avoid summary judgment.

We agree with appellees that neither the fraudulent concealment doctrine nor the discovery rule tolled limitations on Trousdale's legal malpractice claims until August or September 2005.

**1. The discovery rule and the fraudulent concealment doctrine did not toll limitations on Trousdale's legal malpractice claims until August or September 2005.**

**a. The discovery rule and the fraudulent concealment doctrine.**

In claiming that the statute of limitations was tolled, Trousdale asks us to hold preliminarily that the trial court erred in striking one statement from her affidavit. We do not address that claim; even if the trial court did err in striking the statement—a holding we do not reach—her claims would still be barred.[4]

In Texas, legal malpractice actions are governed by a two-year statute of limitations. *Willis,* 760 S.W.2d at 644. Limitations generally begin to run when facts have come into existence that authorize a claimant to seek a judicial remedy. *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 120 (Tex.2001).

However, the Texas Supreme Court has held that the discovery rule applies to legal malpractice claims, since "it is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney." *Willis,* 760 S.W.2d at 645. Under the discovery rule, the statute of limitations for legal malpractice actions does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing his cause of action. *Id.* at 646. Discovery occurs when a plaintiff has knowledge of such facts, conditions, or circumstances as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action. *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 753–54 (Tex.App.-Amarillo 1995, writ denied); *Smith v. Cutrer & Jefferson,* No. 14–00–00100–CV, 2002 WL 87485, at *4 (Tex. App.-Houston [14th Dist.] Jan. 24, 2002, no pet.) (not designated for publication). Knowledge of such facts is, in law, equivalent to knowledge of the cause of action for limitations purposes. *See White v. Bond,* 362 S.W.2d 295, 295 (Tex.1962).

A defendant seeking summary judgment on the basis of limitations must conclusively prove when the cause of action accrued and, must negate the discovery rule by proving that, as a matter of law, there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of his injury. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). If the movant establishes that

---

**4.** In the struck statement, Trousdale states, "The first time I realized I had a risk of harm was in August or September 2005 when I saw this in the file I had been given." This is a subjective statement, reflecting her personal belief, which is a subjective standard. As we state below, the discovery rule and the fraudulent concealment doctrine both measure what the client should have known based on a reasonable person standard—an objective standard.

the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

The fraudulent concealment doctrine is an affirmative defense to the statute of limitations. *See id.* at 749; *Ponder v. Brice & Mankoff,* 889 S.W.2d 637, 645 (Tex.App.-Houston [14th Dist.] 1994, writ denied). This doctrine provides that where a defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Ponder,* 889 S.W.2d at 645. However, the estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Id.* (citing *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983)). Notably, this is the same standard that applies to the discovery rule. *Compare Borderlon,* 661 S.W.2d at 909, *with Bell,* 899 S.W.2d at 754.

To prove fraudulent concealment, a plaintiff must demonstrate the defendant had (1) actual knowledge that a wrong occurred; (2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong. *McMahan,* 108 S.W.3d at 493. Here, appellees sought summary judgment on, among other things, the issue of whether the fraudulent concealment doctrine tolled limitations on Trousdale's legal malpractice claims until August or September 2005.

As we explain below, based upon the summary judgment evidence appellees attached to their motion for summary judg-

ment, we conclude that appellees proved as a matter of law that, as of June 2003, Trousdale knew facts that would cause a reasonably prudent person to make an inquiry which, if pursued, would lead to discovery of her legal malpractice causes of action. Appellees therefore demonstrated that neither the discovery rule nor the fraudulent concealment doctrine tolled limitations on Trousdale's legal malpractice claims until August or September 2005, and thus met their burden on summary judgment. The evidence Trousdale attached to her response to the summary judgment motion did not create a fact issue.

**b. Appellees proved that, as of June 2003, Trousdale knew facts that would cause a reasonably prudent person to investigate and to discover the legal malpractice causes of action.**

The summary judgment evidence produced by appellees on the limitations issue consists of the following:

- Excerpts from Trousdale's deposition:
 - In January 2003, Henry told Trousdale something was missed in connection with her probate action;
 - Henry told Trousdale the case was sealed and that Trousdale would need a probate lawyer attorney to pursue things further;
 - Henry hung up on Trousdale when Trousdale asked Henry to reschedule the probate hearing;
 - Henry refused to answer Trousdale's phone calls.
- Trousdale sends a fax to a potential lawyer claiming she needs to sue Henry because "everything I have worked for is gone-even my inheritance."

Trousdale's affidavit attached to her summary judgment response contained the following evidence:

- Henry told Trousdale she could not obtain her file from either Henry or the Liberty County courthouse because the file was sealed;

- Henry did not tell her the status of the district court action and she didn't ask;

- Appellees never told her either action was dismissed;

- Trousdale didn't discover either action had been dismissed until she received the file in August–September of 2005;

- Trousdale first knew she had a risk of harm in the district court action when she received her files;

- After the last conversation with Henry, Trousdale began looking for a new probate attorney;

- Trousdale continued paying her legal bills while looking for a new attorney;

- Trousdale still considered appellees her attorneys until she hired a new probate attorney and, since she never hired a new attorney in the district court action and they never withdrew,

she considered them her attorneys throughout.

Even taking all of Trousdale's statements in her summary judgment affidavit as true, they do not overcome the negative information Trousdale knew that should have caused her to investigate more:

- something related to her probate case was missed;

- her lawyer hung up on her and refused to accept her calls;

- her lawyer told her she should hire a new probate lawyer;

- Trousdale had at least preliminary discussions with a new lawyer;

- Trousdale sent this new lawyer a fax telling him she needed to sue Henry because she had lost everything, including her inheritance.[5]

▆▆▆▆ This information would have prompted a reasonable person to investigate further and, ultimately, to discover that her actions were dismissed and that she should consider filing a malpractice action.[6]

---

**5.** Trousdale claims that the fax does not really mean that she knew she had lost everything. Trousdale misses the significance of the fax. The fax shows that, even as of June 2003, she thought that something was amiss regarding her lawyers' representation of her and she was concerned that her inheritance might be in jeopardy. Taking into account the other negative indicators—such as her lawyer refusing to accept her calls—at this point, a reasonable person would have investigated fully the status of her causes of action and hired a new lawyer, if necessary, to fully investigate.

**6.** In fact, Trousdale could have discovered that the probate action and the district court action had been dismissed for want of prosecution by examining the public record, and, by this time, she should have been suspicious enough to inquire about the two actions at the courthouse. The matters disclosed in public records filed in a county courthouse—including the dismissal of a legal action—have been held to preclude application of the discovery

rule to toll the accrual of limitations on a cause of action. *See Lang v. City of Nacogdoches*, 942 S.W.2d 752, 758 (Tex.App.-Tyler 1997, writ denied) (holding discovery rule inapplicable to facts of case because appellants were charged with constructive notice of what could have been known by examination of the public record; dismissal of criminal case against appellants was a matter of public record, and "they or their attorney could have discovered the dismissal by examining the public records"). A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records, and constructive notice in law creates an irrebuttable presumption of actual notice. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex.1981). Furthermore, when evidence of a cause of action may be disclosed by examination of public records, limitations begin to run from the time the cause of action could have been discovered by the exercise of ordinary diligence. *See id.* (citing *Sherman v. Sipper*, 137 Tex. 85, 152 S.W.2d 319, 321 (1941)).

In short, because no fact question exists about when Trousdale's legal malpractice causes of action accrued and limitations began to run, the trial court did not err in granting summary judgment in favor of appellees on Trousdale's legal malpractice claims. We therefore overrule Trousdale's final issue.

## Conclusion

In summary, we conclude that the trial court erred in viewing Trousdale's breach of fiduciary duty claims as nothing more than claims for legal malpractice. We reverse that portion of the trial court's order granting summary judgment on Trousdale's breach of fiduciary duty claims and dismissing those claims with prejudice. However, we agree with the trial court that neither the discovery rule nor the fraudulent concealment doctrine tolled the running of the statute of limitations on Trousdale's legal malpractice claims until August or September 2005. We affirm that portion of the trial court's order granting summary judgment on Trousdale's legal malpractice claims and dismissing those claims with prejudice. We remand the case to the trial court for further proceedings in accordance with this opinion.

GUZMAN, J., concurring and dissenting.

EVA M. GUZMAN, Justice, concurring and dissenting.

I concur in the majority's holding that Lenieta Trousdale's legal malpractice claim is time-barred; however, I respectfully dissent from the majority's conclusion that Trousdale's claim for breach of fiduciary duty is separate and independent from her legal malpractice claim. Applying the parties' arguments to the record before us, I would conclude that Trousdale's claim of legal malpractice encompasses her claim of breach of fiduciary duty. Although none of the considerations discussed below is individually dispositive, they collectively demonstrate that the gist of Trousdale's complaint is her contention that she lost her underlying claims through appellees' professional negligence. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

## I. ANALYSIS

### A. Claimant's Characterization of "Misrepresentations" Not Dispositive

A claim against an attorney for breach of fiduciary duty "requires allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action." *McMahan v. Greenwood*, 108 S.W.3d 467, 495 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (citing *Goffney v. Rabson*, 56 S.W.3d 186, 193–94 (Tex.App.-Houston [14th Dist.] 2001, pet. denied)). On the other hand, a client cannot necessarily sustain a separate cause of action for breach of fiduciary duty based on misrepresentations or deception simply by characterizing the conduct as such a breach. *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). Labels used by the parties are not determinative. *Goffney*, 56 S.W.3d at 192. Instead, we must examine the substance of the claims and determine if the allegations "go beyond" the alleged professional negligence. *McMahan*, 108 S.W.3d at 495.

A claim of legal malpractice may be described as a claim for professional negligence. *Golden v. McNeal*, 78 S.W.3d 488, 492 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Negligence consists of a breach of duty owed to the claimant that proximately causes the claimant damages.

*Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex.2006) (per curiam). Similarly, to prevail on a legal malpractice claim, a plaintiff must show "that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Alexander v. Turtur & Assocs., Inc.,* 146 S.W.3d 113, 117 (Tex. 2004). But because an attorney is a fiduciary as a matter of law, the professional negligence of an attorney is often measured against the duties the attorney owes to the client as a fiduciary. *Murphy v. Gruber,* 241 S.W.3d 689, 696 (Tex.App.-Dallas 2007, pet. denied).[1] Thus, it is sometimes unclear whether an attorney's breach of duty is more appropriately characterized as malpractice or breach of fiduciary duty. *See Deutsch,* 97 S.W.3d at 189 (noting that "there are confusing statements in dicta in some of the cases"). To make that determination, we may consider whether the claim of breach of fiduciary duty "goes beyond" the malpractice claim, or whether it instead relies on the same set of facts and seeks the same remedies. *McMahan,* 108 S.W.3d at 495.

## B. No Reliance on Distinct Facts

In determining whether a claim is improperly fractured, we may examine the facts asserted in the client's pleadings to determine if they allege a cause of action distinct from the attorney's alleged negligence. *See Murphy,* 241 S.W.3d at 698 (examining the acts or omissions alleged in the petition to determine the substance of the complaint); *Haas v. George,* 71 S.W.3d

904, 910 (Tex.App.-Texarkana 2002, no pet.) (holding that motion for summary judgment on legal malpractice claims encompassed breach-of-fiduciary-duty claims arising from the same set of facts); *Cuyler v. Minns,* 60 S.W.3d 209, 216 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (reasoning that summary judgment on breach-of-fiduciary-duty claim is proper if summary judgment on malpractice claim is proper, and both arise from same set of facts and circumstances); *Klein v. Reynolds, Cunningham, Peterson & Cordell,* 923 S.W.2d 45, 49 (Tex.App.-Houston [1st Dist.] 1995, no pet.) (op. on reh'g) (concluding that alternative causes of action in the appellant's petition "are all essentially 'means to an end' to achieve one complaint of legal malpractice" (quoting *LTV Energy Prods. Co. v. Chaparral Inspection Co.,* 827 S.W.2d 593, 594–95 (Tex.App.-Houston [1st Dist.] 1992, writ denied))). In *Cuyler,* for example, two attorneys tried their client's automobile accident claim to a jury, which awarded $5,000 in damages. *Cuyler,* 60 S.W.3d at 212. The client sued the defendant attorney for breach of fiduciary duty, breach of contract, negligence, DTPA violations, negligence per se, and violations of the Texas Disciplinary Rules of Professional Conduct. *Id.* We concluded that Cuyler's claims for breach of contract and breach of fiduciary duty represented an impermissible fracturing of her legal malpractice claim. *Id.* at 216 ("If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission

---

1. In *Murphy,* the Fifth Court of Appeals explained:

 [W]ith lawyers, the standard of care in negligence claims is often defined by the characteristics of that inherent fiduciary relationship. As a result, courts refer to the fiduciary relationship that the lawyer has to the client and use fiduciary standards to

define the standard of care required of lawyers. *See, e.g., Two Thirty Nine Joint Venture v. Joe,* 60 S.W.3d 896, 905 (Tex.App.-Dallas 2001), *rev'd on other grounds,* 145 S.W.3d 150 (Tex.2004). And courts most often have applied those standards to conclude that the claims assert professional negligence, not breach of fiduciary duty.

occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages." (quoting *Sledge v. Alsup,* 759 S.W.2d 1, 2 (Tex.App.-El Paso 1988, no writ))).

Here, the facts pleaded in support of Trousdale's breach-of-fiduciary-duty claim are the same as those asserted in her legal malpractice claim. Although Trousdale argues that appellees misrepresented that the files in her underlying case were sealed, this assertion is pleaded in connection with—and appears inseparable from— her allegations that appellees (1) failed to inform her that her cases were dismissed, and (2) failed to return her files. Such allegations are more appropriately characterized as claims of professional negligence. *See, e.g., Archer v. Med. Protective Co. of Fort Wayne, Ind.,* 197 S.W.3d 422, 427–28 (Tex.App.-Amarillo 2006, pet. denied) (failure to communicate with client involves malpractice rather than breach of fiduciary duty).[2] Although the allegation of the same facts for legal malpractice and breach of fiduciary duty is not dispositive of the fracturing issue, such repackaging of claims supports the conclusion that the claims are essentially one claim in different guises.[3] And significantly (as discussed *infra* ), Trousdale relied on the same allegations, albeit unsuccessfully, in her attempts to toll limitations on her malpractice claims.

## C. No Harm or Benefit from Alleged Breach

The elements of a cause of action for breach of fiduciary duty are:

1. A fiduciary relationship between the plaintiff and defendant that was

2. breached by the defendant, resulting in

 a. injury to the plaintiff, or

 b. benefit to the defendant.[4]

Here, there are no injuries to the client or benefit to the attorneys other than those attributable to the legal malpractice claim.

### 1. No Distinct Harm to Client

When a claim of breach of fiduciary duty is based upon injury to the client, damages caused by the attorney's professional negligence will not support the separate claim. *See Deutsch,* 97 S.W.3d at 191. In *Deutsch,* we concluded that the trial court erred in granting a directed verdict on the grounds that the client's claims of breach of fiduciary duty, which were based on undisclosed conflicts of interest and failure to withdraw due to those conflicts, improperly fractured the client's legal malpractice claims. *Id.* Although we concluded that these were distinct claims, we affirmed part of the trial court's judgment on anoth-

2. *See also Weaver v. Wyly,* No. 06–98–00141–CV, 1999 WL 691861, at *3 (Tex.App.-Texarkana Sept.8, 1999, no pet.) (not designated for publication) (attorney's failure to return client's file does not extend legal malpractice limitations period); *Tennison v. Krist,* No. 01–97–00039–CV, 1998 WL 502557, at *3 (Tex. App.-Houston [1st Dist.] Aug. 20, 1998, pet. denied) (not designated for publication) (failure to return file asserted as a basis for malpractice claim).

3. *Archer v. Med. Protective Co. of Fort Wayne, Ind.,* No. Civ.A.2:03–CV–314–C, 2004 WL 1194455, at *6 (N.D.Tex. May 28, 2004) (citing *Deutsch,* 97 S.W.3d at 190).

4. *See Jones v. Blume,* 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied); *see also Burrow v. Arce,* 997 S.W.2d 229, 239–40 (Tex. 1999) (client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty); *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 573–74, 160 S.W.2d 509, 514 (1942) (fiduciary must account to his principal for any benefit received through breach of fiduciary duty); *McMahan,* 108 S.W.3d at 496 (claim of breach of fiduciary duty alleged injury to plaintiff/alleged client rather than benefit to defendant/attorney).

er basis. Specifically, we held that the trial court properly granted directed verdict on those particular fiduciary-duty claims because there was no evidence of damages attributable to the conduct that was alleged to constitute the breach rather than conduct that allegedly constituted professional negligence. *Id.*[5]

Here, we must determine whether a separate claim is alleged; thus, we look to the pleadings rather than the evidence. *See Goffney,* 56 S.W.3d at 194. Trousdale initially alleged that appellees' negligence caused the dismissal of her underlying suits, resulting in "actual economic damages of at least $360,000.00 from a loss of all of her personal property that had been converted and an interest in real estate which she was entitled to." As pleaded, these damages arose, if at all, from the professional negligence of her attorneys in allowing her claims to be dismissed, not from a misrepresentation that her case files were sealed. And "when an attorney's malpractice results in financial loss, the aggrieved client is fully compensated by recovery of that loss; the client may not recover damages for mental anguish or other personal injuries." *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.,* 192 S.W.3d 780, 784 (Tex.2006) (citing *Douglas v. Delp,* 987 S.W.2d 879, 885 (Tex.1999)); *see also Winkle Chevy–Olds–Pontiac, Inc. v. Condon,* 830 S.W.2d 740, 746 (Tex.App.-Corpus Christi 1992, writ dism'd) (mental anguish damages are not ordinarily awarded in conversion actions).

Trousdale subsequently amended her petition to add the statement, "Plaintiff also sues for mental anguish damages proximately caused by Defendants[']

breach of fiduciary duties[,]" and she alleged that the breach consisted of appellees' false statements that her files were sealed. Trousdale further asserted that these misrepresentations were made in an attempt to conceal appellees' negligence. But as discussed *infra,* the remedy for such concealment of professional negligence is to delay the accrual of the malpractice cause of action until the client knows or in the exercise of reasonable diligence should have known of the malpractice. For the reasons discussed by the majority, I agree that, despite Trousdale's allegations that appellees attempted to conceal their negligence, the malpractice cause of action accrued more than two years before suit was filed.

### 2. *No Distinct Benefit to Appellees*

A person who violates an agreement to perform compensable services in a fiduciary relationship breaches the agreement on which the right to compensation is based. *Burrow,* 997 S.W.2d at 237. But although it is unnecessary for a client to sustain actual damages to maintain an action for breach of fiduciary duty, Trousdale also did not seek the equitable remedy available for such a breach—i.e., the return of the fees by which appellees benefitted. *See id.* at 232 ("[A]n attorney who breaches his fiduciary duty to his client may be required to forfeit all or part of his fee, irrespective of whether the breach caused the client actual damages."); *cf. Murphy,* 241 S.W.3d at 698 (holding that clients' allegations constituted claims of legal malpractice, but the remedies sought—fee forfeiture and constructive trust—are breach-of-fiduciary-duty remedies). Further, she did not allege matters necessary to sup-

---

**5.** We further acknowledged that damages are not essential to recovery for breach of fiduciary duty. *Id.* at 189 (citing *Burrow,* 997 S.W.2d at 237–47 (holding that, although negligence claim fails if client suffers no dam-

ages, clients still may obtain fee forfeiture as remedy for breach of fiduciary duty, even in absence of damages)). This subject is discussed *infra* at 241–42.

port such relief. *See Burrow,* 997 S.W.2d 229 at 241 (full or partial fee forfeiture must be based on "clear and serious violation of duty").[6]

Although Trousdale did not allege a distinct injury or benefit to sustain an independent claim for breach of fiduciary duty, the face of her pleadings demonstrates another purpose for her allegations: that of overcoming the time-bar to her malpractice claims.

**D. Equitable Estoppel and the Discovery Rule**

Although it is not a separate cause of action, equitable estoppel may be asserted as a defensive plea to bar a defendant from raising the defense of limitations. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156 n. 1 (Tex.2004). Similarly, the "discovery rule" can delay a claim for legal malpractice from accruing until the client knows or in the exercise of reasonable diligence should have known of the attorney's wrongful act. *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 156 (Tex. 1991).

Here, the facts that Trousdale characterizes as a claim for breach of fiduciary duty are actually asserted as a defense to the limitations bar applicable to her malpractice claims. For example, Trousdale pleaded the following in connection with her professional-negligence claim:

> Defendants *fraudulently concealed their negligence in failing to appear* at the trial settings in September–October 2002 from Plaintiff. Defendants knew that they had committed negligence in letting Plaintiff[']s cases be dismissed based upon their non[-]appearance. Defendants failed to disclose the dismissal to Plaintiff and *used deception to conceal their negligence* by Defendant Henry telling Plaintiff when she inquired about when the trial would be held that a hearing had been "missed" and at that time could not be rescheduled because the trial court had sealed the file. *Plaintiff relied upon the deceptive misrepresentations of Defendant Henry and was not able to learn the true facts of dismissal until she obtained the file in September 2005. Thus, Defendants are equitably estopped by their deceptive representations to assert the statute of limitations to Plaintiff's negligence claims until at least September 2005.*

(Emphasis added). She then asserted that her attorneys breached their fiduciary duties as follows:

> Defendants failed to disclose the dismissal of Plaintiff[']s cases to her, immediately after their dismissal in September–October 2002, while continuing to demand and accept payment for their services and misrepresenting to Plaintiff that her cases could not be rescheduled for hearing because the files were sealed.

> Defendants intentionally refused to return Plaintiff's files to her, while continuing to act as her attorneys, until September 2005, *in order to conceal*

---

**6.** " 'A violation is clear if a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, would have known that the conduct was wrongful.' " *Id.* (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. d (Proposed Final Draft No. 1, 1996)). Factors relevant in determining the seriousness of a violation include "the gravity and timing of the violation, its wilfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies." *Id.* (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 (Proposed Final Draft No. 1, 1996)). Protection of the public's interest in maintaining the integrity of attorney-client relationships is another factor to be considered. *Id.* at 244.

*from Plaintiff that her cases had been dismissed and were time[-]barred.*

(Emphasis added). Thus, Trousdale's pleadings reveal that her legal malpractice claims are time-barred unless there is a basis on which to avoid limitations.

Although she characterizes appellees' alleged deception as a breach of fiduciary duty, I would describe these allegations as a defense to limitations. The reasons for treating such allegations as an invocation of the discovery rule rather than a separate cause of action are exemplified in the following discussion in *Willis v. Maverick:*

> The special relationship between an attorney and client further justifies imposition of the discovery rule. A fiduciary relationship exists between attorney and client. As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation. The client must feel free to rely on his attorney's advice. Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved. Further, breach of the duty to disclose is tantamount to concealment. Thus, the California Supreme Court writes: "[p]ostponement of accrual of the cause of action until the client discovers, or should discover, the material facts in issue vindicates the fiduciary duty of full disclosure; it prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure."

760 S.W.2d 642, 645 (Tex.1988) (emphasis added, citations omitted). In sum, I would conclude that the factual assertions at issue are not distinct from and do not "go beyond" Trousdale's malpractice claim. *See McMahan,* 108 S.W.3d at 495. To the contrary, these allegations are the underpinnings essential to maintain a malpractice claim at this late date; thus, treatment of these allegations as a separate breach-of-fiduciary-duty claim impermissibly fractures Trousdale's legal malpractice claim. I therefore would hold that all of Trousdale's claims are time-barred, and I would affirm the summary judgment in its entirety.

## II. McMahan Distinguished

Although I agree with the majority that *McMahan v. Greenwood* offers some guidance in analyzing the issues presented in this case, my interpretation of that case differs from that expressed by the majority.[7] The majority describes *McMahan* as a suit brought by a client, McMahan, against his former attorney, Henderson. *See* Majority Opinion, *ante* at 231–32. But in *McMahan,* the existence of an attorney-client relationship was an unresolved question of fact. *McMahan,* 108 S.W.3d at 492, n. 10 (observing that McMahan raised alternative claims based on the existence or the absence of an attorney-client relationship, but concluding that the reviewing court "need not define the precise parameters of McMahan's lawsuit"); *id.* at 493 (stating that McMahan responded to motions for summary judgment that denied the existence of an attorney-client relationship "with more than a scintilla of evidence regarding the existence of an attorney-client relationship"). Given the existence of this question of material fact, we could not and did not express an opinion as to whether McMahan's various causes of action impermissibly fractured a claim of professional negligence.

7. *Cf. Erdman v. State,* 861 S.W.2d 890, 897 (Tex.Crim.App.1993) (McCormick, P.J., dissenting) (distinguishing a case relied upon by the majority and authored by the dissenting justice).

The majority, however, reads *McMahan* to imply that a client is likely to have a cause of action for breach of fiduciary duty that is distinct from a claim for legal malpractice if the client alleges that his attorney has made uncorrected misrepresentations. *See* Majority Opinion, *ante* at 231–32. I do not read *McMahan* to suggest an opinion in that situation, which, as the majority acknowledges, was not presented in that case.

In particular, I would like to emphasize that our conclusion that McMahan's claims of fraud, fraudulent concealment, and fraudulent inducement survived summary judgment was not dependent on the existence of an attorney-client relationship. *Id.* at 493–94. Instead, we concluded that the defendant attorney had a "duty to disclose the entire truth and to correct any misimpressions caused by his earlier statements" *regardless* of whether an attorney-client relationship existed. *Id.* at 494 (discussing the fraudulent concealment claim and citing *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212–13 (Tex.App.-Houston [14th Dist.] 2001, pet. denied)); *id.* at 495 (discussing claims of fraud and fraudulent inducement and concluding that the facts supported a duty to disclose). Our reliance on *Anderson* is significant, for in that case, we explained that the existence of a fiduciary relationship is but one of several possible bases for imposing a duty to disclose. *Anderson*, 44 S.W.3d at 212. As relevant to this case, we expressly recognized in *Anderson* that one who "makes a partial disclosure and conveys a false impression" has a duty to disclose information to correct that false impression. *Id.* at 213. As *Anderson* illustrates, that duty is independent of the existence of a fiduciary relationship. *Id.*

Regarding McMahan's claims of negligent misrepresentation, we explained, "[the attorney's] arguments are identical to those he asserted against McMahan's fraud and fraudulent inducement causes of action. For the reasons we rejected them there, we reject them here." *McMahan*, 108 S.W.3d at 497. And because the claims of fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation survived summary judgment, the evidence supporting those claims was "some evidence" of an unlawful overt act. Consequently, McMahan's conspiracy claim also survived the motion for no-evidence summary judgment, because the only ground for judgment asserted in that motion was the absence of evidence of an unlawful overt act. *Id.* at 497–98.

Although we also held that McMahan's claims of legal malpractice and breach of fiduciary duty survived summary judgment, our conclusion was based on evidentiary failure. Specifically, the affidavit supplied by the summary-judgment movant was insufficient to establish his entitlement to judgment as a matter of law. *See id.* at 496 (attorney's affidavit that he was not McMahan's attorney in 1994 did not refute McMahan's allegations and affidavit that the attorney represented him in 1989).

In sum, I agree with the majority that *McMahan* contains a brief reference to the non-fracturing rule that is helpful in this case: when examining the pleadings, it is useful to compare the allegations of fact, causation, and damages asserted in connection with the breach-of-fiduciary-duty claim and determine if they "go beyond the mere negligence allegations in a malpractice action." *Id.* at 495; Majority Opinion, *ante* at 231 n. 3. I respectfully disagree, however, with any implication that the allegations contained in McMahan's pleadings would or would not violate the non-fracturing rule. Because that issue was not resolved in *McMahan*, it provides no additional guidance to our resolution of this case.

### III. Conclusion

I concur in the majority's conclusion that Trousdale's legal malpractice claims are time-barred. Because I also would conclude that Trousdale's claim of breach of fiduciary duty is encompassed in her claim of legal malpractice, I would hold that all of her claims are time-barred. I therefore would affirm the summary judgment in its entirety.