Charles W. BURNETT, Appellant,

v.

David SHARP, Appellee.

No. 14–09–00420–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 21, 2010.

Charles W. Burnett, Rosharon, pro se.

David Sharp, Angleton, for appellee.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

### MAJORITY OPINION [1]

KEM THOMPSON FROST, Justice.

This is an appeal from a case in which a client sued his former lawyer alleging that the lawyer refused to return the unearned part of a fee retainer. The main issue is

[1.] This is a majority opinion as to sections I., II A, and II.C.3. and a plurality as to the remainder.

whether, under a de novo standard of review, the trial court erred in concluding that each of the client's claims is based on an "indisputably merit less legal theory." The client's claims for breach of fiduciary duty, money had and received, and conversion are not based on indisputably merit less legal theories, but the client's negligence and intentional-misrepresentation claims are based on indisputably merit less legal theories. Accordingly, the trial court's judgment is affirmed in part and reversed and remanded in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Charles W. Burnett is an inmate housed in the Texas Department of Criminal Justice, Institutional Division. He filed suit *in forma pauperis* against appellee David Sharp, a Texas lawyer. In his petition, Burnett alleges that Sharp represented him in a criminal case and that he gave Sharp a $3,000 retainer for legal services. Burnett alleges that Sharp refused to return the unearned part of the retainer after Burnett replaced Sharp with another lawyer. Before service of process was accomplished, and without a hearing, the trial court signed an order dismissing Burnett's case with prejudice on grounds that Burnett "failed to state a cause of action as a matter of law." Burnett appeals from the trial court's dismissal order.

## II. ANALYSIS

### A. Did the trial court dismiss the claims under Chapter 14 of the Texas Civil Practice and Remedies Code?

■ In its dismissal order the trial court states that Burnett "failed to state a cause of action as a matter of law," without

citing to any case, statute, or other legal authority. As a threshold matter, we consider whether, in dismissing Burnett's claims, the trial court was acting under Chapter 14 of the Texas Civil Practice and Remedies Code, which governs inmate *in forma pauperis* lawsuits.[2] *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 14.001–.014 (Vernon 2009). A trial court may dismiss an inmate's claims under Chapter 14, "either before or after service of process, if the court finds that . . . the claim is frivolous or malicious [.]" *Id.* § 14.003(a)(2). The court "may" hold a hearing "before or after service of process," and may do so "on motion of the court, a party, or the clerk of the court." *Id.* § 14.003(c). In *Minix v. Gonzales*, this court determined that an order substantially similar to the one under review constituted an order dismissing the claims as frivolous under sections 14.003(a)(2) and (b)(2) because the claims had "no arguable basis in law." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 14.003(a), (b); *Minix v. Gonzales*, 162 S.W.3d 635, 637 (Tex.App.-Houston [14th Dist.] 2005, no pet.). In other opinions this court has followed *Minix* and has equated a determination that an inmate "failed to state a cause of action as a matter of law" with a determination that an inmate's claim "has no arguable basis in law" under sections 14.003(a)(2) and (b)(2). *See Ramon v. Dow*, No. 14-07-01024-CV, 2009 WL 508427, at *1 (Tex.App.-Houston [14th Dist.] Mar. 3, 2009, no pet.) (mem. op.); *Gardner v. Tex. Dep't of Crim. Justice*, No. 14-07-00992-CV, 2009 WL 87594, at *1 (Tex.App.-Houston [14th Dist.] Jan. 15, 2009, pet. denied) (mem.op.). But, in two other post-*Minix* opinions, without citing *Minix*, this court has concluded that an order dismissing an inmate's claim because the inmate "failed to state a cause of

**2.** All statutory references in this opinion are to the Texas Civil Practice and Remedies Code, unless otherwise specified.

action as a matter of law" was not a dismissal under Chapter 14. *See Anthony v. Owens*, No. 14–07–01077–CV, 2009 WL 4250762, at *1 (Tex.App.-Houston [14th Dist.] July 7, 2009, no pet.) (mem.op.); *Cooper v. Tex. Dep't of Crim. Justice*, No. 14–07–00741–CV, 2009 WL 1312944, at *1 (Tex.App.-Houston [14th Dist.] May 12, 2009, no pet.) (mem.op.). The *Anthony* and *Cooper* courts, after noting that the respective appellants had not challenged the trial court's dismissal without a hearing and for a basis not stated in Chapter 14, addressed the appellants' complaints premised on a Chapter 14 dismissal and concluded that the complaints would lack merit even if the trial court had dismissed the claims under Chapter 14. *See Anthony*, 2009 WL 4250762, at *1–3; *Cooper*, 2009 WL 1312944, at *1–3.

In part of his appellate brief, Burnett asserts that the trial court erred by dismissing his claims for "failure to state a claim" because this is not a proper basis for dismissal under Chapter 14. Under *Minix*, the trial court's dismissal based on a determination that Burnett "failed to state a cause of action as a matter of law" is equivalent to a dismissal based on a determination that Burnett's claims are frivolous because they have "no arguable basis in law." *Minix*, 162 S.W.3d at 637. The panels in *Anthony* and *Cooper* did not distinguish or purport to apply *Minix*. *See Anthony*, 2009 WL 4250762, at *1; *Cooper*, 2009 WL 1312944, at *1. Research does not reveal a decision from a higher court or this court sitting en banc that is on point and contrary to this part of *Minix*, nor is there an intervening and material change in the statutory law. Therefore, we are bound by this prior holding in *Minix* rather than the decisions in *Anthony* and *Cooper*. *See Chase Home Fin., L.L.C. v. Cal. W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (stating that, absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel holding or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court); *see also Lucky–Goldstar, Int'l (America), Inc. v. Phibro Energy Int'l, Ltd.*, 958 F.2d 58, 60 (5th Cir.1992) (stating that, if one panel of a court of appeals fails to apply or distinguish a prior panel holding that is on point, a third panel of that court is bound by the holding of the first panel rather than the second panel). Under the *Minix* holding, we construe the trial court's determination that Burnett "failed to state a cause of action as a matter of law" to be a determination that Burnett's claims have "no arguable basis in law" under sections 14.003(a)(2) and (b)(2). *See Minix*, 162 S.W.3d at 637.

## B.  What claims did Burnett plead?

In determining the nature of claims in a petition to which the trial court sustained no special exceptions, this court must construe the pleading liberally in the pleader's favor and construe the petition to include all claims that reasonably may be inferred from the language used in the petition, even if the petition does not state all the elements of the claim in question. *See London v. London*, 192 S.W.3d 6, 13 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (concluding that if trial court has not sustained any special exceptions as to a petition, then it should be liberally construed). The author of the concurring and dissenting opinion urges a departure from this rule, arguing that it should not be applied to petitions subject to Chapter 14 that are dismissed before service of process is effected. Carving out such an exception would contravene longstanding policy that courts should read pleadings liberally to reach the merits of the claims

asserted rather than passing on the merits at the pleading stage. The application of the liberal-construction-of-pleadings rule is not based on whether a defendant has had an opportunity to assert special exceptions; rather, this rule is based on the general policy of liberally construing a pleading except to the extent that the trial court has ordered the pleader to cure specific defects in the pleading.[3] For this reason, courts construing inmate petitions dismissed before service of process also construe the inmate petitions liberally.[4] *See Lagaite v. Boland,* 300 S.W.3d 911, 913 (Tex.App.-Amarillo 2009, no pet.) (stating court must liberally construe inmate petition dismissed before service of process); *Presiado v. Sheffield,* 230 S.W.3d 272, 275 (Tex.App.-Beaumont 2007, no pet.) (construing liberally inmate petition dismissed before service of process based on trial court's failure to sustain special exceptions); *Perales v. Kinney,* 891 S.W.2d 731, 732 (Tex.App.-Houston [1st Dist.] 1994, no pet.) (same as *Lagaite*). There is no legal authority to support a departure from the liberal-construction-of-pleadings rule in this context and no compelling reason to create or apply a different rule.

█ Under a liberal construction of the petition, Burnett alleges the following:

● In June 2006, Burnett retained Sharp, a lawyer, to represent him in a criminal matter.

● Burnett gave Sharp a $3,000 retainer.

● Sharp had Burnett's case reset five times but did not provide any other legal services before Burnett replaced Sharp with another lawyer.

● Burnett called Sharp's office once, and Burnett's family called Sharp many times on behalf of Burnett, requesting a refund of the unearned portion of the retainer.

● Burnett served Sharp with a written demand for the return of the unearned portion of the retainer. Sharp did not respond to this demand, nor did Sharp return any part of the unearned retainer to Burnett.

● Sharp breached his fiduciary duty to Burnett by refusing to return the unearned part of Burnett's retainer.

● Sharp committed legal malpractice, negligence, and "deception."

● Burnett is seeking compensatory damages in the amount of $10,000.

Under a liberal construction of his petition, Burnett has pleaded claims for breach of fiduciary duty, money had and received, conversion, negligence, and intentional misrepresentation.[5] *See London,*

3. The author of the concurring and dissenting opinion also states that it was not possible for Sharp to file special exceptions because he had not been served. In fact, defendants who have not been served with citation sometimes learn of the suit against them and file answers and special exceptions without ever having been served with process. *See* Tex.R. Civ. P. 121. In any event, for the reasons noted above, the liberal-construction-of pleadings rule is applied regardless of whether the defendant has been served or has responded to the suit.

4. Though neither the assertion nor sustaining of special exceptions is required before a trial court has the power to dismiss an inmate's

claims under Chapter 14, this does not impugn application of the rule that petitions should be liberally construed absent the sustaining of special exceptions. In a non-Chapter 14 case, defendants are not required to file special exceptions before seeking dismissal of a plaintiff's claims, yet the plaintiffs claims are liberally construed except to the extent that special exceptions have been sustained. *See London,* 192 S.W.3d at 13.

5. According to the author of the concurring and dissenting opinion, the conclusion that Burnett has pleaded conversion and money had and received is based on one sentence of his petition, which the author finds insufficient to plead these claims. *See post* at p.

192 S.W.3d at 13 (holding that pleading was sufficient to assert a claim for money had and received, under which the only thing that needs to be proved " 'is that defendant holds money which in equity and good conscience belongs to [the plaintiff]' ") (quoting *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687 (Tex.1951)); *Vickery v. Texas Carpet Co., Inc.*, 792 S.W.2d 759, 763 (Tex.App.-Houston [14th Dist.] 1990, writ denied) (stating that conversion is the unauthorized exercise of dominion and control over property inconsistent with or to the exclusion of another's superior rights in that property); *Avila v. Havana Painting Co.*, 761 S.W.2d 398, 399–400 (Tex.App.-Houston [14th Dist.] 1988, writ denied) (holding that lawyer breached his fiduciary duty by refusing to return to former client funds in his possession which the former client was entitled to receive). The next question is whether the trial court erred in concluding that these claims have no arguable basis in law.

## C. Do Burnett's claims have an arguable basis in law?

■■■ Whether a claim has an arguable basis in law is a legal question to be reviewed de novo. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1993); *Retzlaff v. Tex. Dep't of Crim. J.*, 94 S.W.3d 650, 653 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). A claim has no arguable basis in law only if it is based on (1) wholly incredible or irrational factual allegations; or (2) an indisputably merit less legal theory. *See Nabelek v. Dist. Attorney of Harris County*, 290 S.W.3d 222, 228 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). An inmate's claim may not be dismissed

merely because the court considers the allegations "unlikely." *See Nabelek*, 290 S.W.3d at 228. If Burnett's claims have an arguable basis in law, then the trial court erred in dismissing them as frivolous. *See Retzlaff*, 94 S.W.3d at 654. Burnett's claims are not based on wholly incredible or irrational factual allegations. Therefore, the main issue on appeal is whether each of Burnett's claims is based on an indisputably merit less legal theory.

### 1. Breach–of–Fiduciary–Duty Claim

■■■ This court noted in *Avila* that, under a provision of the former Code. of Professional Responsibility, a lawyer was required to promptly pay or deliver to the client all funds in the possession of the lawyer which the client was entitled to receive. *See Avila*, 761 S.W.2d at 400. The *Avila* court concluded that a lawyer's failure to promptly pay or deliver such funds constitutes a breach of fiduciary duty. *See id.* In *Avila*, this court held that a lawyer breached his fiduciary duty by refusing to tender funds recovered for the client in a collection suit until after the client sued the lawyer for return of the funds. *See id.* at 399–400. By the time the client sued the lawyer, the lawyer's representation must have been terminated. *See Stephenson v. LeBoeuf. See* 16 S.W.3d 829, 836 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (stating that "[i]ndeed it cannot be said there was any attorney-client relationship when Stephenson sued LeBoeuf for his unpaid attorney's fees"). Therefore, the *Avila* court concluded that the lawyer had a fiduciary duty even after the lawyer's representation of

606, 607. This analysis is not based on one sentence of the petition. Instead, the analysis is based on a liberal construction of the entire petition, including the pleaded facts upon which Burnett bases his claims. *See Abraham & Co. v. Smith*, No. 14–03–00163–CV, 2004

WL 210570, at *2 (Tex.App.-Houston [14th Dist.] Feb. 5, 2004, no pet.) (mem.op.) (liberally construing a petition to include a claim for breach of an orally modified contract based on factual allegations in the petition).

the client in the collection suit had ended. *See Avila,* 761 S.W.2d at 399–400. A lawyer who refuses to pay or deliver funds belonging to his former client upon termination of the representation has breached a fiduciary duty owed to the former client.[6] *See id.*

■■■ The word fiduciary " 'refers to integrity and fidelity.' " *Goffney v. Rabson,* 56 S.W.3d 186, 193 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (quoting *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 512 (1942)). A breach of fiduciary duty occurs when a lawyer benefits improperly from his representation of the client by, among other things, a "failure to deliver funds belonging to the client."[7] *Watkins v. Plummer,* No. 14–08–01040–CV, 2010 WL 2195459, at *6 (Tex.App.-Houston [14th Dist.] June 3, 2010, no pet. h.); *Duerr v. Brown,* 262 S.W.3d 63, 70–71 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Trousdale v. Henry,* 261 S.W.3d 221, 230 (Tex.App.-Houston [14th Dist.] 2008, pet. denied); *Goffney,* 56 S.W.3d at 193. This court repeatedly has affirmed that a lawyer breaches his fiduciary duty if he refuses to give a client funds belonging to the client, and this court has never stated that this duty ceases if the client discharges the lawyer. *See Watkins,* 2010 WL 2195459, at *6; *Duerr,* 262 S.W.3d at 70–71; *Trousdale,* 261 S.W.3d at 230; *Goffney,* 56 S.W.3d at 193. Indeed, given that a client may be discharging his lawyer for good cause based on prior breaches by the

lawyer of his fiduciary duty to the client, there are compelling reasons why this fiduciary duty should continue until the lawyer returns the client funds in his possession.

The author of the concurring and dissenting opinion concludes that a lawyer has a duty to return a client's property upon demand during and after the representation but that this duty loses its fiduciary character when the client terminates the representation. In reaching this conclusion, the author relies upon a single case, *Stephenson v. LeBoeuf. See* 16 S.W.3d 829, 836 (Tex.App.-Houston [14th Dist.] 2000, pet. denied), which, unlike the case under review, did not involve a lawyer's failure to return the unearned portion of the retainer.

In *Stephenson,* the lawyer's representation of the client terminated in 1983. *See id.* Six years later, in 1989, the lawyer obtained a judgment against the former client for unpaid attorney's fees. *See id.* at 834. In 1992, the lawyer was seeking to enforce his judgment lien by pursuing proceeds from the sale of the former client's real property. *See id.* The former client asserted that the lawyer owed her a fiduciary duty in 1992 based on the representation that ended in 1983. *See id.* The former client contended that the lawyer breached this fiduciary duty by asserting a claim against the proceeds from the sale of her real property. *See id.* This court held that the lawyer owed no fiduciary duty based on the representation that had

---

6. The author of the concurring and dissenting opinion asserts that *Avila* is not on point because Burnett's breach-of-fiduciary-duty claim is based completely on conduct occurring after the representation ended. Presuming this distinction is valid, Burnett's claim is based on Sharp's acceptance of the retainer while representing Burnett, and Sharp's earning some but not all of the retainer during the representation. Therefore, Burnett's claim is

not based completely on conduct occurring after the representation ended.

7. Though the author of the concurring and dissenting opinion asserts that this analysis would effect a significant change in the law, in light of this court's opinions in *Avila, Watkins, Duerr, Trousdale,* and *Goffney,* this analysis is instead an application of existing law.

terminated more than eight years earlier. *See id.* In *Stephenson,* there was no unearned part of a retainer, and the former client did not allege that the lawyer failed to return any unearned retainer. *See id.* at 834–36.

■ The author of the concurring and dissenting opinion concludes that Sharp's fiduciary duty and his attorney-client relationship with Burnett ceased when Burnett replaced Sharp with another lawyer, relying upon the *Stephenson* court's statement that "[i]n the absence of an agreement to the contrary, an attorney-client relationship generally terminates upon the completion of the purpose of the employment." *Id.* at 836. There is no sound reason why refusing to return client funds during the representation should be a breach of fiduciary duty but that refusing to return the same funds after the representation should not be a breach of fiduciary duty. Under Texas Disciplinary Rule of Professional Conduct 1.15(d), entitled "Declining or Terminating Representation," upon termination of a representation, the attorney shall, to the extent reasonably practical, surrender property that the client is entitled to receive to the client and shall refund any advance payment of attorney's fees that has not been earned.[8] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15(d), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). (Vernon 2005). Given that, upon termination of the representation, a lawyer has a duty to return any unearned part of the retainer and any other client property to which the client is entitled, the return of such property to the client would appear to be one of the purposes of the representation and therefore would be part of the attorney-client relationship under the statement in *Stephenson. See Stephenson,* 16 S.W.3d at 836. But even if the return of unearned retainer did not fall within the scope of the *Stephenson* court's statement, the *Stephenson* court's statement was not absolute; rather, the court spoke to what was "generally" the case. *See id.* The *Stephenson* court did not address whether a lawyer has a fiduciary duty to return to the client any unearned retainer upon termination of the representation. *See id.* at 834–36.

For the reasons stated above, if, as alleged, Sharp refused to return unearned retainer belonging to Burnett, then Sharp breached his fiduciary duty. Therefore, Burnett's breach-of-fiduciary duty claim is not based on an indisputably merit less legal theory, and the trial court erred in dismissing this claim as frivolous under section 14.003(a)(2).

### 2. Claims for Money Had and Received and Conversion

■ If, as alleged, Sharp refused to return unearned retainer belonging to Burnett, then Sharp holds money which in equity and good conscience belongs to Burnett, and Sharp could be found to have exercised dominion and control over the unearned retainer in an unauthorized manner, inconsistent with or to the exclusion of Burnett's superior rights in this property. *See London,* 192 S.W.3d at 13 (holding that under claim for money had and received, the only thing that needs to be proved " 'is that defendant holds money which in equity and good conscience belongs to [the plaintiff]' ") (quoting *Staats,* 243 S.W.2d at 687); *Vickery,* 792 S.W.2d at

---

8. The *Avila* court used a somewhat similar provision under the former Code of Professional Responsibility as a standard for liability. *See Avila,* 761 S.W.2d at 400. There is no need to adopt Rule 1.15(d) as a standard for civil liability in this case to conclude that Burnett's breach-of-fiduciary duty claim is not based on an indisputably merit less legal theory. Instead, the cases cited in this opinion provide the basis for this conclusion.

763 (stating that conversion is the unauthorized exercise of dominion and control over property inconsistent with or to the exclusion of another's superior rights in that property). Therefore, Burnett's claims for money had and received and conversion are not based on indisputably merit less legal theories, and the trial court erred in dismissing these claims as frivolous under section 14.003(a)(2).

### 3. Negligence Claim

■ Burnett also alleged in a conclusory manner that Sharp was negligent. But, notably, Burnett has not alleged that Sharp failed to exercise care, skill, or diligence or that Sharp exercised less care, skill, or diligence than would be exercised by lawyers of ordinary skill and knowledge. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (stating that "[i]f the gist of a client's complaint is that the lawyer did not exercise that degree of care, skill, or diligence as lawyers of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim"). If, as alleged, Sharp refused to return unearned retainer belonging to Burnett, this conduct would be actionable but it would not constitute professional negligence. *See id.* Therefore, we conclude that, to the extent Burnett asserted a negligence claim, the trial court did not err in dismissing this claim as frivolous under section 14.003(a)(2).

### 4. Intentional Misrepresentation Claim

■ Burnett also alleged in a conclusory manner that Sharp engaged in "decep-

tion." Notably, however, Burnett has not alleged that Sharp made any material misrepresentation or that Sharp intended that Burnett act on any such misrepresentation or that Burnett acted in reliance on such a misrepresentation. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001) (stating elements of intentional-misrepresentation claim). If, as alleged, Sharp refused to return unearned retainer belonging to Burnett, this conduct would be actionable but it would not constitute intentional misrepresentation. Therefore, to the extent Burnett asserted an intentional-misrepresentation claim, the trial court did not err in dismissing this claim as frivolous under section 14.003(a)(2).

### III. CONCLUSION

Burnett's petition, liberally construed, contains claims for breach of fiduciary duty, money had and received, conversion, negligence, and intentional misrepresentation. The first three claims are not based on (1) wholly incredible or irrational factual allegations; or (2) indisputably merit less legal theories. Therefore, the trial court erred in dismissing these three claims as frivolous under section 14.003(a)(2).[9] However, Burnett's negligence and intentional-misrepresentation claims are based on indisputably merit less legal theories, and the trial court did not err in dismissing these claims as frivolous.[10] Accordingly, to the extent the trial court dismissed with prejudice Burnett's negligence and intentional-misrepresentation claims, the trial court's judgment is

---

9. Though the trial court erred in dismissing these three claims as frivolous under Chapter 14, the extent to which Burnett has evidence to support the allegations in his petition is not an issue before this court.

10. Because the problems with these two claims cannot be remedied, the trial court's dismissal with prejudice as to these two claims was proper. *See Hickman v. Adams*, 35 S.W.3d 120, 124 (Tex.App.-Houston [14th Dist.] 2000, no pet).

affirmed. The remainder of the judgment is severed, reversed, and remanded for further proceedings consistent with this opinion,

BOYCE, J., concurring and dissenting.

SULLIVAN, J., concurring without opinion.

WILLIAM J. BOYCE, Justice, concurring and dissenting.

I agree that the district court's order operates as a dismissal of inmate Charles W. Burnett's *in forma pauperis* action against his former attorney, David Sharp, under Chapter 14 of the Texas Civil Practice and Remedies Code. *See Minix v. Gonzales,* 162 S.W.3d 635, 637 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (citing Tex. Civ. Prac. & Rem.Code Ann. §§ 14.003(a)(2), (b)(2) (Vernon 2009)). I also agree that the trial court properly dismissed Burnett's "negligence" claim against Sharp because that claim has no arguable basis in law under section 14.003(b)(2).

My disagreements focus on (1) the characterization of Burnett's remaining claims against Sharp; (2) the explanation for an expansive characterization of Burnett's remaining claims based upon the absence of special exceptions in a suit that was dismissed before service; and (3) the breach of fiduciary duty analysis.

This court should affirm the trial court's dismissal of the "legal malpractice" claims Burnett labeled in his original petition as "breach of fiduciary duty," "deception," and "negligence." It should reverse only the trial court's determination that dismissal is with prejudice, and affirm the trial court's judgment as modified to specify that dismissal is without prejudice. This court's disposition is erroneous insofar as it reverses the trial court's judgment as to breach of fiduciary duty and remands

that claim for further consideration, along with claims for conversion and money had and received that Burnett did not assert.

Therefore, I join only sections I., II.A., and II.C.3. of this court's opinion. I concur in this court's judgment in part and respectfully dissent in part.

### Analysis

We usually apply an abuse of discretion standard to review dismissal of claims brought *in forma pauperis* by an inmate. *Hickman v. Adams,* 35 S.W.3d 120, 123 (Tex.App.-Houston [14th Dist.] 2000, no pet.). But when a lawsuit is dismissed without a hearing pursuant to Chapter 14 because it "has no arguable basis in law," our review is *de novo. Minix,* 162 S.W.3d at 637; *Retzlaff v. Tex. Dep't of Crim. Justice,* 94 S.W.3d 650, 653 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). A claim has no arguable basis in law if it is based on (1) wholly incredible or irrational factual allegations; or (2) an " 'indisputably meritless legal theory.' " *Minix,* 162 S.W.3d at 637 (quoting *Gill v. Boyd Distrib. Ctr.,* 64 S.W.3d 601, 603 (Tex.App.-Texarkana 2001, pet. denied)).

In "Plaintiff's Original Petition," Burnett complained "of and about David Sharp, Defendant, alleging legal malpractice...." This pleading included headings entitled "Parties and Service," "Discovery Control Plan," "Jury Demand," "Jurisdiction and Venue," "Facts," and "Prayer." The factual and legal bases for Burnett's specific causes of action are alleged in numbered paragraphs in the "Facts" section of his pleading:

6. In June of 2006, plaintiff retained defendant to represent plaintiff in a criminal matter. Defendant received $3000.00 from plaintiff for [his] ... services.

7. Defendant made an appearance in court for plaintiff's first court appearance, and reset the cause.

8. Defendant made four additional court appearances for plaintiff, all of which defendant reset for the next month.

9. Defendant was replaced with another attorney. Defendant did not render any more services for the fee paid to defendant.

10. Plaintiff called defendant from the jail facility. Defendant's secretary accepted one collect call from plaintiff. Afterwards, the secretary did not accept [any more] ... collect calls from plaintiff.

11. Plaintiff's family called defendant on many [occasions] ... to request a refund, minus defendant's services rendered. Defendant failed to refund any of plaintiff's funds.

12. Plaintiff's family continued to call defendant requesting a refund until plaintiff served defendant a written request for a return of [his] ... funds in September of 2008. Defendant failed to respond nor did defendant refund plaintiff's funds.

13. Defendant has breached [his] ... fiduciary duty owed to plaintiff, by deception and negligence.

In the "Prayer," Burnett asked that "Defendant be cited to appear and answer...." He also asked for "compensatory damages in the amount of $10,000.00;" "punitive damages in the amount of $5,000.00;" and "all relief, in law and in equity, to which Plaintiff [may be] ... entitled."

The factual allegations quoted above are neither irrational nor wholly incredible. Burnett alleges the existence of a dispute with his former attorney arising from Burnett's post-termination request for a partial refund of the fee he paid to the attorney during the representation, and his attorney's post-termination failure to do so. Burnett's factual allegations provide no basis for concluding that his suit is frivolous.

Accordingly, the dispositive issue in this appeal is whether the pleaded legal theories are " 'indisputably meritless.' " *Minix,* 162 S.W.3d at 637 (quoting *Gill,* 64 S.W.3d at 603). Answering this question requires us first to identify Burnett's pleaded legal theories. To do so, we must construe a *pro se* appellant's brief and a *pro se* petition that was dismissed before service of process was accomplished on the defendant. There is no appellee's brief and no trial court pleading by the defendant to assist us in identifying the causes of action at issue. Nor are these causes of action identified by name in the dismissal order. The order states that the trial court "reviewed the pleadings in the above referenced cause" and concludes as follows: "It appearing that the Plaintiff has failed to state a cause of action as a matter of law, it is ORDERED that the cause is dismissed with prejudice to the rights of the Plaintiff to refile the same."

## I. Determining Which Legal Theories Burnett Asserted Against Sharp

Identifying the legal theories Burnett pleaded is made more difficult by his appellate brief's nonspecific references to a "legal malpractice claim." Burnett contends on appeal that he has asserted a non-frivolous claim for "legal malpractice." He asserts that "[a]ll of the elements for a legal malpractice claim [were] presented in appellant's petition." Burnett does not refer in his brief to causes of action for "breach of fiduciary duty," "deception," or "negligence," which are the labels he used in his petition.

This court has identified "a potential nomenclature problem ... caused by the fact that a legal malpractice claim' might be thought of by some as any claim brought by a client against that client's attorney." *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 184 n. 1 (Tex.App.-Houston [14th Dist.] 2002, no pet .); *see also Beck v. The Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 427 n. 10 (Tex.App.-Austin 2009, no pet.). "[W]hen cases refer to 'legal malpractice' or 'a legal malpractice claim,' often they are referring to a negligence claim in which the issue is whether the attorney exercised that degree of care, skill, and diligence as attorneys of ordinary skill and knowledge commonly possess and exercise." *Deutsch*, 97 S.W.3d at 184 n. 1. (citing *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex.App.-Houston [14th Dist.] 2001, pet. denied)); *see also Duerr v. Brown*, 262 S.W.3d 63, 69–70 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

Taking this potential nomenclature problem into consideration, the proper approach on appeal is to address the legal viability of Burnett's "legal malpractice" claim under Chapter 14 by examining it in light of the specific "breach of fiduciary duty," "deception," and "negligence" labels he expressly invoked in his petition to describe his causes of action against Sharp.

## II. Determining the Disposition of Burnett's Legal Theories

### A. Conversion and Money Had and Received

Burnett sued Sharp for "legal malpractice" based on an allegation that Sharp "has breached [his] ... fiduciary duty owed to plaintiff, by deception and negligence." This allegation does not assert claims for conversion or money had and received.

Section II.B. of the plurality opinion explains a broad interpretation of Burnett's allegation on grounds that Sharp did not file special exceptions to the original petition. In so doing, the plurality opinion relies on inapposite case law arising outside the Chapter 14 context. *See London v. London*, 192 S.W.3d 6, 13 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 600–01 (Tex.1993)). This explanation does not withstand scrutiny because Sharp could not be expected to file special exceptions to a petition that was dismissed under Chapter 14 before it was served on him. Moreover, Sharp would not have been required to file special exceptions even if Burnett's petition had been served on him. The absence of special exceptions has no bearing on whether Burnett asserted legally viable claims under Chapter 14. The erroneous incorporation of special exception standards into the Chapter 14 analysis threatens to sow confusion.

Chapter 14 operates according to its own distinct procedures. "Because a trial court is authorized to dismiss a claim *before* service of process, i.e., before the defendant has filed an answer, we find the court has continuing authority to dismiss a cause of action even where the defendant files no answer." *McCollum v. Mt. Ararat Baptist Church, Inc.*, 980 S.W.2d 535, 537 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (original emphasis). "In fact, the applicability of chapter fourteen is not contingent on the defendant's satisfaction of *any* procedural rule." *Id.* (original emphasis). "This is consistent with the purpose of chapter fourteen which is 'to control the flood of frivolous lawsuits being filed in the courts of this State by prison inmates, consuming valuable judicial resources with little offsetting benefit .' " *Id.* (quoting *Hickson v. Moya*, 926 S.W.2d 397, 399 (Tex.App.-Waco 1996, no pet)).

This reasoning has been applied to reject contentions that special exceptions are required before dismissal under Chapter 14. *See Hughes v. Massey,* 65 S.W.3d 743, 745 (Tex.App.-Beaumont 2001, no pet.) (Special exceptions are not required before dismissal of inmate's *in forma pauperis* action under Chapter 14; "the inmate has no right to notice of a motion to dismiss or to an opportunity to amend."); *see also Bonds v. Rodriguez,* No. 04–02–00156–CV, 2003 WL 141043, at *3 (Tex.App.-San Antonio Jan. 22, 2003, pet. denied) (mem.op.) (Special exceptions are not required before dismissal under Chapter 14; "[h]ad the Legislature intended to impose such a requirement on defendants in a suit subject to chapter 14, it would have done so. In fact, the Legislature indicated otherwise by permitting the trial court to dismiss a suit as frivolous even before process is served."); *Thomas v. Bush,* No. 07–99–0302–CV, 2000 WL 21272, at * 3 (Tex.App.-Amarillo 2000 January 13, 2000, no pet.) (per curiam) (not designated for publication) ("Because a trial court is authorized to dismiss a claim before service of process, i.e., before the defendant has even filed an answer, we find that the court's authority to dismiss a cause of action does not depend upon a defendant specially excepting to the petition).

Chapter 14 allows dismissal under circumstances in which dismissal would not be permitted in other contexts. *Cf. Fort Bend County v. Wilson,* 825 S.W.2d 251, 253 (Tex.App.-Houston [14th Dist.] 1992, no writ) ("Although Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted, the Texas Rules of Civil Procedure do not contain any analogous provision.... Under the Texas Rules of Civil Procedure, a special exception is the appropriate vehicle for urging that the plaintiff has failed to plead a cause of action, and the pleader must be given, as a matter of right, an opportunity to amend the pleading.") (citing *Centennial Ins. v. Commercial Union Ins.,* 803 S.W.2d 479, 482 (Tex.App.-Houston [14th Dist.] 1991, no writ), and *Moseley v. Hernandez,* 797 S.W.2d 240, 242 (Tex. App.-Corpus Christi 1990, no writ)). Because a defendant need not be served and need not file special exceptions before dismissal under Chapter 14 is appropriate, the absence of special exceptions cannot properly be relied upon to explain an expansive interpretation of the allegations made in an inmate's *in forma pauperis* action. We should not mix apples and oranges.

Burnett did not plead causes of action for conversion or money had and received when he sued Sharp for "legal malpractice" based on an allegation that Sharp "breached [his] ... fiduciary duty owed to plaintiff, by deception and negligence." The absence of special exceptions does not transform Burnett's narrow allegation into a claim for conversion or money had and received. Therefore, this court errs when it concludes that the trial court erred under Chapter 14 by dismissing causes of action for conversion and money had and received that Burnett did not plead.

## B. Breach of Fiduciary Duty

A legally viable claim for breach of fiduciary duty requires the existence of a fiduciary relationship between Burnett and Sharp. *See, e.g., Trousdale v. Henry,* 261 S.W.3d 221, 239 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). Such a relationship existed while Sharp represented Burnett. *See Duerr,* 262 S.W.3d at 69. The attorney-client relationship ended upon Burnett's termination of Sharp's representation. *See Stephenson v. LeBoeuf,* 16 S.W.3d 829, 836 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Under these cir-

cumstances, Burnett cannot rely upon a claim for breach of fiduciary duty to address a post-representation dispute with his former attorney that is based wholly on conduct alleged to have occurred after the representation ended.

The circumstances here parallel *Stephenson*, 16 S.W.3d at 836, in which this court rejected a breach of fiduciary duty claim in connection with a dispute over certain escrowed sums that arose in 1992 between attorney Stephenson and his former client LeBoeuf. "Stephenson argues his representation of LeBoeuf in her divorce could not give rise to a fiduciary duty with respect to the escrow account because that representation terminated upon her divorce in 1983." *Id.* "We agree." *Id.* "The attorney-client relationship is based [on] a contractual relationship in which the attorney agrees to render professional services for the client." *Id.* "In the absence of an agreement to the contrary, an attorney-client relationship generally terminates upon the completion of the purpose of the employment." *Id.* This court concluded that the terminated representation provided no basis for a breach of fiduciary duty claim by LeBoeuf predicated entirely on Stephenson's conduct after the representation had ended. *Id.*

Just as there was no attorney-client relationship in existence when Stephenson committed the conduct of which LeBoeuf complained, here too there was no attorney-client relationship in existence when Sharp is alleged to have committed the conduct of which Burnett complains. Therefore, Burnett's allegation does not present a legally viable claim for breach of fiduciary duty. *See id.*

Section II.C.1. of the plurality opinion relies on *Avila v. Havana Painting Co.,* 761 S.W.2d 398, 399–400 (Tex.App.-Houston [14th Dist.] 1988, writ denied), for the proposition that "[a] lawyer who refuses to pay or deliver funds belonging to his former client upon termination of the representation has breached a fiduciary duty owed to the former client." *See ante,* at 8. This reliance on *Avila* is misplaced.

The client hired attorney Avila to collect past-due accounts and paid him a fee to do so. *Avila,* 761 S.W.2d at 399. During the representation, Avila collected $8,755 belonging to the client but refused to tender that sum to the client and demanded payment of an additional fee. *Id.* The client then sued Avila, alleging that he "breached his fiduciary duty to his client, Havana, and ... converted funds which belonged to Havana." *Id.* at 399–400. The trial court rendered judgment in the client's favor following a bench trial, and Avila appealed. *Id.*

This court affirmed. *Id.* at 400. "At trial, Havana presented evidence that Avila received funds from Woodland Oaks Apartments which Havana was entitled to receive and that Avila refused to deliver those funds to Havana until Havana sued Avila and requested an injunction to compel Avila to release the funds." *Id.* "Havana also presented evidence that it was necessary to hire an attorney to bring suit against Avila to collect the money to which Havana was entitled." *Id.* This court held that sufficient evidence established Avila's breach of his fiduciary duty to the client. *Id.*

*Avila* addresses an attorney's conduct *during* the representation that breached a fiduciary obligation owed *during* the representation in connection with a fee dispute that arose *during* the representation and then continued after the representation ended. *Id.* Contrary to the plurality opinion's conclusion, *Avila* does not establish that a breach of fiduciary duty claim is available to address a post-representation dispute between an attorney and a former client that is based wholly on attorney

conduct occurring *after* the representation has ended. Therefore, *Avila* does not control the resolution of Burnett's appeal. *Stephenson* does.

The plurality opinion cannot bolster its position by asserting that Sharp had a "duty" to refund to Burnett any unearned part of the retainer upon termination of his representation of Burnett. *See ante*, at 9–10 (citing Tex. Disciplinary R. Prof'l Conduct 1 .15(d), *reprinted in* Tex. Gov't.Code Ann., tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9)). No additional clarity is provided by discussion of a free-floating "duty" that exists only in the abstract, untethered to a specific cause of action. In any event, this assertion does not resolve the fiduciary duty question because "[t]hese rules do not undertake to define standards of civil liability of lawyers for professional conduct." Tex. Disciplinary R. Prof 'l Conduct Preamble: Scope ¶ 15, *reprinted in* Tex. Gov't.Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). "Violation of a rule does not give rise to a cause of action nor does it create any presumption that a legal duty to a client has been breached." *Id.* "Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." *Id.*

The plurality opinion's approach would effect a significant change in this court's case law. Left unaddressed are the potential consequences of expanding far-reaching fiduciary obligations to encompass disputes between an attorney and a former client that are predicated entirely on attorney conduct occurring after the representation has ended. Because *Avila* focuses on a different situation, that decision also does not address the existence, duration, scope and consequences of a fiduciary duty that applies to a dispute based wholly on an attorney's post-representation conduct.

We should follow *Stephenson* and affirm dismissal of Burnett's claim for breach of fiduciary duty.

### C. Negligence

A "legal malpractice" claim predicated on professional negligence focuses on whether an attorney represented a client with the requisite level of skill. *Duerr*, 262 S.W.3d at 70. "If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim." *Deutsch*, 97 S.W.3d at 189.

Burnett's allegations do not support a legally viable claim against Sharp predicated on professional negligence. Burnett contends that Sharp failed to respond after Burnett replaced him with another attorney and then requested a partial refund of Sharp's fee. Burnett does not challenge the quality of Sharp's professional activity while he represented Burnett, and he does not contend that Sharp failed to exercise the degree of care, skill, or diligence commonly possessed by attorneys of ordinary skill. Therefore, Burnett's "legal malpractice" claim is based on an indisputably meritless legal theory insofar as he asserts a claim for professional negligence arising from a post-termination dispute over a partial refund of the portion of Sharp's fee that, according to Burnett, Sharp did not earn before being terminated. *Cf. Duerr*, 262 S.W.3d at 70 (professional negligence claims were predicated on allegations that attorneys mishandled filing of client's requests for additional benefits pursuant to class settlement).

### D. "Deception"

It is not clear whether Burnett's pleaded claim for "deception" refers to a statutory claim under the Texas Deceptive Trade

Practices Act ("DTPA") or to common law fraud. Burnett fails to assert a legally viable claim for "deception" under either theory.

Burnett cannot assert a legally viable statutory cause of action for "deception" against Sharp under the circumstances alleged because the DTPA does not apply to "a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Tex. Bus. & Com.Code Ann. § 17.49(c) (Vernon Supp.2009). Burnett has not identified circumstances that would invoke an exception to this exemption.[1] *Cf. Latham v. Castillo,* 972 S.W.2d 66, 69 (Tex.1998) (attorney engaged in "unconscionable action" under sections 17.50(a)(3) and 17.45(5) by making affirmative misrepresentation to client that he had filed lawsuit and was actively prosecuting it.).

Similarly, Burnett cannot assert a legally viable common law fraud claim absent circumstances in which Sharp made affirmative misrepresentations or failed to disclose information when there was a duty to disclose it. *See, e.g., Johnson v. Brewer & Prichard, P .C.,* 73 S.W.3d 193, 211 n. 45 (Tex.2002) (fraud based on affirmative misrepresentation); *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."). No such circumstances are described here.

### III. Determining Whether Dismissal Should be With Prejudice

Burnett contends that the trial court erred in dismissing his claims "with preju-

dice." Dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. *Hickman,* 35 S.W.3d at 124. Orders dismissing cases with prejudice have full *res judicata* and collateral estoppel effect, barring subsequent litigation of the same causes of action or issues between the same parties. *Id.* Dismissal with prejudice is proper under Chapter 14 when an inmate's failure to comply with statutory filing requirements cannot be remedied; otherwise, dismissal should be without prejudice. *See id.*

Although Burnett's allegations do not comport with his stated causes of action, I cannot say that Burnett's failure to comply with Chapter 14's requirements is beyond remedy given the gist of his factual allegations. Therefore, the proper disposition in this case is dismissal without prejudice. *See Hickman,* 35 S.W.3d at 124.

### Conclusion

The trial court's April 14, 2009 order dismissing Burnett's suit with prejudice should be modified to state that Burnett's suit is dismissed without prejudice. As modified, the April 14, 2009 dismissal order should be affirmed. Therefore, I concur in the court's judgment in part and dissent in part.

SULLIVAN, J., concurring without opinion.

---

1. Section 17.49(c)'s exemption does not apply to an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion; a failure to disclose information in violation of section 17.46(b)(24); an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion; breach of an express warranty that cannot be characterized as advice, judgment, or opinion; or a violation of section 17.46(b)(26), which prohibits sales of annuity contracts in certain circumstances. *See* Tex. Bus. & Com.Code Ann. § 17.49(c)(1)-(5).