

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00363-CV

RUSSELL JAY REGER                                                    APPELLANT

V.

CRIMINAL DISTRICT ATTORNEY                                           APPELLEES
OF TARRANT COUNTY, TEXAS
AND DETECTIVE JERRY S.
VENNUM # 803

----------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION ON REHEARING[1]

----------

## I. INTRODUCTION

After considering Appellant's motion for rehearing, we deny the motion but withdraw our prior opinion and judgment of May 19, 2011, and substitute the following to make nonsubstantive clarifications.

---

[1]*See* Tex. R. App. P. 47.4.

Appellant Russell Jay Reger appeals the trial court's dismissal of his original petition for writ of mandamus against Appellees Criminal District Attorney of Tarrant County, Texas, and Detective Jerry S. Vennum of the Dalworthington Gardens Department of Public Safety. In his mandamus petition, Reger—an inmate in the Texas Department of Criminal Justice proceeding pro se and *in forma pauperis*—sought to compel the defendants to produce photographs related to his 1996 murder trial under the Texas Public Information Act and article 2.01 of the Texas Code of Criminal Procedure.[2] After a hearing, the trial court granted Appellees' motions to dismiss Reger's suit as frivolous or malicious under chapter 14 of the Texas Civil Practice and Remedies Code.[3] Reger raises three issues on appeal. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Prior Proceedings

A jury convicted Reger of murder on April 12, 1996, and sentenced him to life imprisonment, and this court affirmed the conviction on appeal. *See Reger v. State*, No. 02-96-000217-CR (Tex. App.—Fort Worth July 31, 1997, pet. ref'd) (not designated for publication). In 1998, Reger filed an initial application for writ of habeas corpus under article 11.07 of the code of criminal procedure, Tex. Code Crim. Proc. Ann. art. 11.07 (West Supp. 2010), which the court of criminal

---

[2]Tex. Gov't Code Ann. § 24.011 (West 2004), § 552.028(b) (West 2004); Tex. Code Crim. Proc. Ann. art. 2.01 (West 2005).

[3]Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a)(2) (West 2002).

appeals denied without a written order. *See Ex parte Reger*, No. WR-38,770-01 (Tex. Crim. App. Nov. 4, 1998). In 2005, Reger filed a motion for DNA testing, which the trial court denied after a hearing. *See* Tex. Code Crim. Proc. Ann. art. 64.01 (West Supp. 2010). This court affirmed the trial court's ruling. *See Reger v. State*, 222 S.W.3d 510 (Tex. App.—Fort Worth 2007, pet. ref'd), *cert. denied*, 128 S. Ct. 917 (2008).

From 2004 to 2007, Reger and his agents[4] requested, pursuant to the Texas Public Information Act (PIA), that the Appellees produce fourteen color photographs that Reger and his agents asserted had been taken during the course of the criminal investigation preceding his 1996 murder trial.[5] In responding to the PIA requests, the District Attorney's Office asserted that the PIA did not require compliance because Reger was imprisoned in a correctional facility. *See* Tex. Gov't Code Ann. § 552.028(a). In addition, Dalworthington Gardens Department of Public Safety (the Department) responded in 2004 and 2007, respectively, that the fourteen photographs were no longer in its custody and that it did not know their whereabouts. After additional correspondence, the Department provided Reger with twenty-four photographs of the crime scene, none of which depicted the red Mustang.

---

[4]Three individuals (none of whom were acting as Reger's attorney) made PIA requests on Reger's behalf, including Kristi Cottingham, John A. Pizer, and Shirley Hooks.

[5]Reger asserts that the fourteen color photographs depict the red 1991 Ford Mustang that the victim had been riding in before his death.

3

## B. Instant Proceedings

In an effort to obtain the fourteen color photographs, Reger filed an original petition for writ of mandamus against Appellees on October 22, 2007. In his July 27, 2009 amended petition, Reger asked the trial court to order the Appellees to make available the fourteen photographs and asserted that they "possess forensic blood spatter evidence in which [Reger's expert] . . . . can ma[k]e an accurate expert report upon them, which will then go to prove the relator's guilt, or innocence." Reger based his petition for mandamus on article V, section 8 of the Texas constitution, sections 24.011 and 552.028(b) of the Texas Government Code, and article 2.01 of the Texas Code of Criminal Procedure, and he alleged that his suit was one in equity.

Appellees answered and moved to dismiss Reger's suit as frivolous or malicious under chapter 14 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.003(b)(2). Both Appellees asserted that they had "no pictures in [their] possession" and that they were not required to accept or comply with a request for information from an individual imprisoned or confined in a correctional facility under PIA section 552.028. At an October 9, 2009 hearing, the trial court heard legal arguments from counsel for Appellees and from Reger, who attended and participated without counsel. Afterward, the trial court granted the Appellees' motions to dismiss.

## III. APPLICABLE LAW

### A. Chapter 14 of the Civil Practice and Remedies Code

Inmate litigation (in which an inmate files an affidavit or unsworn declaration of inability to pay costs) is governed by certain procedural rules set forth in chapter 14 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 14.001–.014 (West 2002); *Garrett v. Williams*, 250 S.W.3d 154, 157 (Tex. App.—Fort Worth 2008, no pet.). The purpose of chapter 14 is to aid the trial court in determining whether an inmate's claim is frivolous. *Hamilton v. Pechacek*, 319 S.W.3d 801, 809 (Tex. App.—Fort Worth 2010, no pet.); *Garrett*, 250 S.W.3d at 157. A trial court has broad discretion to dismiss an inmate's suit as frivolous because: "(1) prisoners have a strong incentive to litigate; (2) the government bears the cost of an *in forma pauperis* suit; (3) sanctions are not effective; and (4) the dismissal of unmeritorious claims accrues to the benefit of state officials, courts, and meritorious claimants." *Nabelek v. Dist. Att'y of Harris Cnty.*, 290 S.W.3d 222, 228 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Garrett*, 250 S.W.3d at 158. In determining whether a claim is frivolous, the trial court may consider whether:

> (1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; (3) it is clear that the party cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts.

Tex. Civ. Prac. & Rem. Code Ann. § 14.003(b); *see Nabelek*, 290 S.W.3d at 228; *Garrett*, 250 S.W.3d at 158. In this case, Appellees argued that Reger's claim was frivolous because it had no basis in law or fact.

## B. Standard of Review

We review a trial court's dismissal of an inmate's claim under chapter 14 for an abuse of discretion. *Hamilton*, 319 S.W.3d at 809; *Garrett*, 250 S.W.3d at 158. Because the trial court's hearing consisted solely of legal arguments and did not include the presentation of evidence, the issue on appeal is whether Reger's claims had no arguable basis in law. *Cf. Hamilton*, 319 S.W.3d at 809 (holding that review focuses on whether the inmate's lawsuit has an arguable basis in law when no evidentiary hearing is held).

Whether a claim has an arguable basis in law is a legal question that we review de novo. *Hamilton*, 319 S.W.3d at 809; *Nabelek*, 290 S.W.3d at 228. In conducting our de novo review, we take as true the allegations of the inmate's petition; that is, we review the inmate's petition to determine whether, as a matter of law, it stated a cause of action that would authorize relief. *Scott v. Gallagher*, 209 S.W.3d 262, 266 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A claim has no arguable basis in law if it is an "indisputably meritless legal theory." *Id.* We will affirm the dismissal if it was proper under any legal theory. *Hamilton*, 319 S.W.3d at 809.

6

## C. Mandamus

An action for writ of mandamus initiated in the trial court is a civil action subject to appeal just as any other lawsuit. *Garrett*, 250 S.W.3d at 158. An original proceeding is a suit for purposes of chapter 14. *Id*.; *Harrison v. Vance*, 34 S.W.3d 660, 662 (Tex. App.—Dallas 2000, no pet.).

### 1. Section 24.011 of the Government Code

Section 24.011 of the government code provides that a judge of a district court may grant writs of mandamus necessary to enforce the court's jurisdiction. Tex. Gov't Code Ann. § 24.011; *see* Tex. Const. art. V, § 8. A writ of mandamus will issue to compel a public official to perform a ministerial act. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). A writ of mandamus initiated in the trial court issues only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law. *Harris v. Jones*, 8 S.W.3d 383, 385 (Tex. App.—El Paso 1999, no pet.) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1999)). The relator must establish that, under the circumstances of the case, the facts and the law permit the trial court to make only one decision. *Jones*, 8 S.W.3d at 385–86; *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).

## 2. Public Information Act

A petition for a writ of mandamus such as Reger's has been found to be an appropriate mechanism to enforce the PIA.[6]  *See Harrison*, 34 S.W.3d at 663; *Moore v. Henry*, 960 S.W.2d 82, 83 (Tex. App.—Houston [1st Dist.] 1996, no writ).  Section 552.028 of the PIA provides that a governmental body is not required to accept or comply with a request for information from "an individual who is imprisoned or confined in a correctional facility" or "an agent of that individual, other than that individual's attorney when the attorney is requesting information that is subject to disclosure under this chapter."  Tex. Gov't Code Ann. § 552.028(a)(1), (2).  Thus, a governmental body's decision whether to provide the requested information to an incarcerated individual or his agent is a discretionary act.[7]  *Harrison*, 34 S.W.3d at 663.

---

[6]Section 552.321 of the government code provides for statutory mandamus relief in certain instances that do not apply in this case.  Tex. Gov't Code Ann. § 552.321 (West 2004).

[7]Reger does not challenge the discretionary nature of section 552.028 on appeal, noting instead that his mandamus suit combined section 552.028 with article 2.01 and that, therefore, his mandamus suit was based in law and fact.  To the extent that the trial court dismissed Reger's lawsuit due to the discretionary nature of article 552.028, it did not abuse its discretion.  *See* Tex. Gov't Code Ann. § 552.028(a); *Harrison*, 34 S.W.3d at 663; *Moore*, 960 S.W.2d at 83. Additionally, Reger's assertion that Detective Vennum "waive[d] the statutory exceptions under Section 552.028" is without merit because section 552.028 is not considered an "exception" that can be waived under sections 552.301–.302 of the government code.  *Compare* Tex. Gov't Code Ann. § 552.028 *with id.* §§ 552.301–.302 (West Supp. 2010).

## IV. ANALYSIS

In three issues, Reger contends that the trial court abused its discretion by (1) ruling that article 2.01 of the code of criminal procedure created an ethical and discretionary obligation, not a mandatory duty, on the Appellees to disclose exculpatory evidence; (2) dismissing Reger's writ of mandamus without permitting him an opportunity to conduct discovery; and (3) finding that Reger's claim was frivolous or malicious and granting the Appellees' motions to dismiss.

As demonstrated below, the trial court could have properly dismissed Reger's suit as frivolous either (1) because it was an improper post-conviction vehicle to obtain the fourteen color photographs or (2) because Reger's mandamus petition does not, as a matter of law, establish a cause of action that would authorize relief. Further, the trial court followed the dictates of chapter 14 and did not abuse its discretion by dismissing Reger's suit without allowing discovery.

### A. Trial Court's Chapter 14 Dismissal[8]

Reger asserts that Appelless have a duty to produce the requested photographs under article 2.01 because the legislature enacted it to be a "reciprocal discovery statute" to *Brady v. Maryland* and because *Brady* imposes an "absolute disclosure duty" on prosecutors and members of their team.[9] Article

---

[8]We address Reger's first and third issues together.

[9]Reger asserts that because Appellees did not object to, or argue against, the application of article 2.01 to the trial court, they failed to preserve error and are "judicially estopped" from doing so on appeal. Judicial estoppel does not

2.01 of the code of criminal procedure, titled "Duties of district attorneys," provides in pertinent part that "[i]t shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused." Tex. Code Crim. Proc. Ann. art. 2.01.

> In *Brady v. Maryland*, the Court held that
>
> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963). It is settled law that a defendant's due process rights are violated if he does not obtain, upon request, evidence in the State's possession favorable to him "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Page v. State*, 7 S.W.3d 202, 205–06 (Tex. App.—Fort Worth 1999, pet. ref'd) (citing *Brady*, 373 U.S. at 87, 83 S. Ct. at 1197)). There is, however, no general right to discovery in a criminal case, and *Brady* does not create one. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977); *Michaelwicz v. State*, 186 S.W.3d 601, 612–13 (Tex. App.—Austin 2006,

---

apply because Appellees have not taken inconsistent positions in subsequent actions. *See generally Schmidt v. State*, 278 S.W.3d 353, 358 (Tex. Crim. App. 2009). Additionally, the preservation rule applies to the complaining party on appeal. *See* Tex. R. App. P. 31; *Reyna v. State*, 168 S.W.3d 173, 176–77 (Tex. Crim. App. 2005) (citing *Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002)).

pet. ref'd); *Page,* 7 S.W.3d at 207.  To invoke *Brady* and its progeny*,* a defendant must present evidence that (1) the prosecution suppressed or withheld evidence; (2) the evidence would have been favorable to the accused; and (3) this evidence would have been material to his defense.  *Michaelwicz,* 186 S.W.3d at 613.

### 1. Mandamus as an Improper Vehicle

The trial court properly dismissed Reger's suit as frivolous because Reger failed to establish that, under the circumstances of the case, the law permitted the trial court to make only one decision.  *See Jones*, 8 S.W.3d at 385–86.  Due to the distinct posture of Reger's lawsuit, the trial court could have properly found that it was an improper post-conviction vehicle to obtain the fourteen color photographs due to the exclusivity of post-conviction habeas corpus law and because Reger's apparent purpose in seeking the photographs was to pursue further habeas relief.[10]  *See* Tex. Code Crim. Proc. Ann. art. 11.07, § 5 ("After conviction the procedure outlined in this Act shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner.").

Reger asserted in his mandamus pleadings that he requested access to the photographs under the PIA in order to "ultimately prove his legal innocence on subsequent habeas corpus application, pursuant to Texas Code of Criminal

---

[10]Reger asserts on appeal that he raised a *Brady*/ineffective assistance claim regarding these same fourteen color photographs in his initial state habeas claim.  In their brief, the Appellees state generally that Reger has previously made unsuccessful allegations of undisclosed exculpatory evidence.  The filings referenced by the parties are not part of the appellate record before this court.

11

Procedure, art. 2.01 and 11.07, § 4."[11] He also asserted that, before he could file a subsequent habeas application under article 11.07, section 4 of the code of criminal procedure, his expert must first obtain and review the fourteen color photographs.[12] Additionally, throughout his pleadings, Reger attacks the validity of his underlying conviction, stating for example that he is "being presently illegally incarcerated under an uncontroverted, adoptively admitted illegal- null and VOID judgment of conviction."

Jurisdiction to grant post-conviction habeas corpus relief in felony cases rests exclusively with the court of criminal appeals. *See* Tex. Code Crim. Proc. Ann. art. 11.07, § 3 (providing that post-conviction writs of habeas corpus are to be filed in the trial court in which the conviction was obtained and made returnable to the court of criminal appeals); *Ater v. Eighth Court of Appeals*, 802

---

[11]Article 11.07, section 4 provides in part that a court may not consider the merits of or grant relief based on a subsequent application unless the application contains sufficient specific facts establishing that (1) the current claims and issues have not been and could not have been presented previously in an original application or (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 11.07, § 4.

[12]Reger explains that his subsequent habeas application must include a prima facie claim of innocence and that he cannot meet this standard without obtaining the photographs so that his expert can perform a forensic reconstruction. While we express no opinion about the potential outcome of a subsequent habeas application filed by Reger, we note that in his mandamus petition, Reger stated that the autopsy report and the pathologist's testimony refute eyewitness Christina Rene Storey's version of events and that he "has made a prima facie showing to this court that his underlying conviction: (1) is not final due to being illegal- null and void; and (2) that the results are not reliable, fair, or just." Further, our analysis does not depend on Reger's potential for success in a subsequent habeas application.

S.W.2d 241, 243 (Tex. Crim. App. 1991) (holding that intermediate appellate court could not grant acquittal by mandamus because "[w]e are the only court with jurisdiction in final post-conviction felony proceedings"). "Article 11.07 contains no role for the courts of appeals; the only courts referred to are the convicting court and the Court of Criminal Appeals." *In re McAfee*, 53 S.W.3d 715, 716 (Tex. App.—Houston [1st Dist.] 2001, orig. proceeding). Moreover, several intermediate appellate courts have held that, even if a mandamus relator is not actually requesting habeas relief, jurisdiction lies with the court of criminal appeals if the purpose of the request is to pursue further habeas relief. *See Self v. State*, 122 S.W.3d 294, 294–95 (Tex. App.—Eastland 2003, no pet.) (dismissing an appeal for want of jurisdiction where trial court denied appellant's request for a free copy of the trial court's records in order to prosecute a post-conviction writ of habeas corpus); *In re Trevino*, 79 S.W.3d 794, 795 (Tex. App.—Corpus Christi 2002, orig. proceeding) (holding that court of appeals did not have jurisdiction to issue mandamus directing district court to forward copy of transcripts and evidence to inmate for purposes of pursuing post-conviction relief).

Notably, in 2005, Reger filed a petition under civil procedure rule 202 (governing depositions before suit) seeking to depose the judge who presided over his criminal trial, and the trial court dismissed the petition for failure to comply with certain provisions of rule 202 and chapter 14 of the civil practice and remedies code. *See In re Reger*, 193 S.W.3d 922, 923 (Tex. App.—Amarillo

2006, pet. denied). The Seventh Court of Appeals held that "[a]ssuming *arguendo*" that the trial court erred in dismissing the petition, the error was harmless for several reasons, including (1) that it was "beyond dispute" that Reger sought to "depose the trial judge who presided over his criminal trial to obtain evidence to nullify his felony conviction for murder"; (2) that "effort to nullify a felony conviction must be undertaken via habeas corpus instituted per art. 11.07 of the Texas Code of Criminal Procedure"; and (3) that "an art. 11.07 habeas proceeding is not civil in nature, but criminal." *Id.* The court further stated that

> because the anticipated suit or claim Reger desired to initiate is criminal, as opposed to civil in nature, the relief afforded under Rule 202 was unavailable to him.
>
> In sum, criminal matters have their own rules of discovery, such as they are. We opt not to enhance that body of rules by engrafting on to them Texas Rule of Civil Procedure 202. We leave that to the courts of last resort.

*Id.* For similar reasons, the trial court in the instant case could have reasonably determined that, because it was not the convicting court, it did not have jurisdiction over Reger's post-conviction efforts to pursue habeas relief.

In his mandamus pleadings, Reger essentially asserted that his mandamus suit should not be construed as the pursuit of habeas corpus relief because he made it very clear to the trial court that "success in this action will not 'necessarily demonstrate the invalidity of confinement or its duration.'"[13] Reger

---

[13]Reger specifically asserted that his mandamus action was not barred under *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372 (1994)

also argued, however, that he had "made a prima facie showing to [the trial court] that his underlying conviction: (1) is NOT final due to being illegal- null and VOID; and (2) that the results are NOT reliable, fair, or just." In addition to the circular nature of his reasoning, Reger does not refute that the purpose of requesting access to the fourteen photographs is to pursue further habeas relief.

For these reasons, the trial court could have properly found that Reger's lawsuit was an improper post-conviction vehicle to obtain the fourteen color photographs, and therefore, the trial court did not abuse its discretion by dismissing Reger's lawsuit as frivolous.

## 2. Article 2.01 and *Brady*

To the extent that Reger's amended petition could be construed as asserting a violation of article 2.01 and *Brady*, as opposed to seeking habeas relief or discovery of the photographs, we hold that the trial court could have validly dismissed Reger's suit as frivolous on this additional ground. Assuming without deciding that a party could ever enforce code of criminal procedure article 2.01 and *Brady* through a civil mandamus proceeding,[14] Reger's mandamus

---

(distinguishing claims that are properly brought in habeas and those that may be brought under 42 U.S.C. § 1983 and holding that when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," § 1983 is not an available remedy).

[14] *See Dist. Att'ys Office for the Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2320 (2009) (indicating that "*Brady* is the wrong framework" to apply in assessing a convicted defendant's right to access evidence). Osborne filed suit under 42 U.S.C. § 1983 to access evidence from his trial in order to subject it to DNA testing. *Id*. at 2315. The Court rejected the Ninth Circuit's reasoning that the State of Alaska's failure to turn over DNA evidence for testing for a post-

15

petition does not, as a matter of law, set forth facts establishing a cause of action that would authorize relief. *See* Tex. Code Crim. Proc. Ann. art. 2.01; *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196–97. As demonstrated below, Reger's pleadings do not establish on their face that Appellees suppressed the photographs at the time of trial, and Reger has not alleged facts supporting his *Brady* allegation; i.e., he does not allege that the photographs are favorable and material. Thus, Reger has not pleaded facts that establish a mandatory duty by Appellees to produce the requested photographs. *See United States v. Bagley*, 473 U.S. 667, 674, 105 S. Ct. 3375, 3379 (1985) (citing *Brady*, 373 U.S. at 87, 83 S. Ct. at 1197) (holding that the *Brady* rule requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment).

Reger asserts throughout his pleadings that the Appellees suppressed or withheld the photographs at the time of trial, and he attaches as supporting evidence a portion of his trial record. This portion of the record, however, demonstrates that at the time of trial Reger and his trial counsel were aware of the photographs' existence or, at a minimum, their content. Specifically, the trial excerpt attached to Reger's pleadings reveals that his trial counsel questioned Detective Vennum (the lead detective in Reger's case at the time of trial) whether investigating officers had taken photographs of the car in which the victim had

conviction proceeding violated Osborne's due process right to exculpatory evidence under *Brady*. *Id.* at 2319–20. The Court explained that "Osborne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id.* at 2320.

16

been riding as a passenger immediately before the offense, and Detective Vennum responded affirmatively. When Reger's trial counsel asked the detective whether he brought the photographs to court, the following dialogue occurred:

> A. [Detective Vennum]: I don't believe we did. I can look on this — the transmittals of everything that we brought over here. I don't believe those were part of what was brought.
>
> Q. [Counsel]: Did Officer Paul Boone take photographs of the vehicle?
>
> A. Yes, sir, he did.
>
> . . . .
>
> Q. [D]id he report to you that he observed the vehicle to have a small amount of blood across the passenger side in the center area of the hood? If you'll look at his report, please.
>
> A. Yes, sir.
>
> Q. Did he also report to you that there was a small area of blood located on the roof of the vehicle on the passenger side of the vehicle just above the passenger door?
>
> A. Yes, sir, he did.
>
> Q. Did he further report to you that he also observed that the inside of the passenger side door had several blood spots and some dried tissue on it?
>
> A. Yes, sir, he did.
>
> Q. And further that he located a small piece of tissue on the passenger side floor board just in front of the passenger seat?
>
> A. Yes, sir, he did.

17

Q. And did he report to you that the blood and tissue matter appeared to be confined to the passenger side of the vehicle, including and forward of the passenger side door?

A. Yes, sir, he did.

Q. Is Officer Boone here today?

A. No, sir, he's not.

REDIRECT EXAMINATION

Q. [State]: Just for clarification, the report that Officer Boone made and photographs that he took and inspection of the car that he made, that wasn't actually made on the night of the shooting, it was on April 5th of '95?

A. [Detective Vennum]: That's correct.

. . . .

RECROSS-EXAMINATION

Q. [Counsel]: All right. Officer — Lieutenant Vennum, did you dispatch Officer Boone on April the 5th at approximately 5:10 to collect photographic evidence and samples of blood and other matter from a 1991 red Ford Mustang? Is that when you dispatched him to do that?

A. [Detective Vennum]: Yes, sir, it is.[15]

---

[15]We have a copy of Reger's trial record from his direct appeal, and we take judicial notice of a portion of the closing argument of Reger's trial counsel in which he tells the jury, "Actually, you could use some more photographs. You could use the photographs of the car itself which were not brought to court. *It's true that I didn't subpoena them*, but the State didn't bring them down either and you should have them." [Emphasis added.] *See Goodson v. State*, 221 S.W.3d 303, 304 n. 2 (Tex. App.—Fort Worth 2007, no pet.) (noting that appellate court may judicially notice its own records in the same or related proceeding involving the same or nearly the same parties). Defense counsel also reiterated in detail the blood evidence found in the car.

18

While Reger characterizes this testimony as proof that the State withheld or suppressed evidence, we disagree and hold that, for purposes of our review, the quoted testimony confirms that Reger and his counsel were aware of the photographs or, at a minimum, their content.[16] *See Mass v. Quarterman*, 446 F. Supp. 2d 671, 693 (W.D. Tex. 2006) (stating that *Brady* imposes a duty of disclosure of information, regardless of what form that information might assume). The prosecution team is not obligated to produce evidence already known to or discoverable by the defendant under *Brady. Hayes v. State*, 85 S.W.3d 809, 814–15 (Tex. Crim. App. 2002); *see also Mass*, 446 F. Supp. 2d at 693 (finding no *Brady* violation where specific reports were not disclosed, but the substance of the information contained in the reports was known by defense counsel); *Jones v. State*, 234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no pet.) (holding *Brady* did not apply to medical records known and available to defendant that he did not procure). Because *Brady* is triggered by the discovery, after trial, of information favorable to the accused that had been known before or during trial to the prosecution but unknown to the defense, *Bagley*, 473 U.S. at 678, 105 S. Ct. at 3381, and because Reger's pleadings and the attached excerpt from his murder trial establish that Reger and his counsel knew about the fourteen photographs, Reger's claim has no arguable basis in law. *See Hamilton*, 319 S.W.3d at 809; *Scott*, 209 S.W.3d at 266.

---

[16]Notably, defense counsel did not object that the State had failed to previously produce the photographs, and he did not request a recess or move for a continuance in order to obtain and view the photographs.

19

In addition, Reger speculates throughout his mandamus pleadings that the photographs might be exculpatory and that they could possibly prove his innocence. However, courts will not typically order the State to produce information under *Brady* based merely upon a defendant's speculation that the requested information contains exculpatory evidence. *Michaelwicz*, 186 S.W.3d at 615 (citing *Page*, 7 S.W.3d at 206). Here, Reger asserts that his forensics expert has requested the photographs "so that he can ma[k]e an accurate expert report upon them, which will then go to prove [Reger's] guilt[] or innocence." Reger further asserts that he

> only seeks for the Respondent(s) to release the above-mentioned 14-color photograph[]s to Louis L. Akin so that forensic testing can be finally performed on them to determine whether or not they are exculpatory, inculpatory, or inconclusive. Through other scientific evidence already developed, [Reger] believes that those photograph[]s will ultimately prove to be exculpatory. However, that call is left up to the unbias[ed] pro bono expert opinion of Mr. Akin. If the Respondent(s) truly believe in [Reger's] guilt; truly believe in their evidence to prove [his] guilt, then they should have no fear in allowing [Reger] to shoot himself in his own foot.

At the chapter 14 dismissal hearing, Reger asserted, "I'm just seeking now these photographs, because I have the assistance of an expert, a reconstruction expert, that has taken my case pro bono and wants to do a full evaluation of the forensics." Reger later stated, "I can't say how this expert is going to rule." As the trial court correctly noted at the chapter 14 hearing, the evidence Reger was requesting "may or may not show anything" and "in that situation, they don't have to turn it over."

20

Reger fails to provide even a theory regarding how the photographs would be favorable and material.[17]  As Reger notes in his petition, he pleaded not guilty to the State's murder charge and asserted a self-defense theory, claiming that the victim was the aggressor.  While he asserted in his petition that he needed access to the color photographs so that his expert "may decide whether Appellees or their agents knew that [eyewitness Christina Rene Storey] had lied about the shooting events," i.e., the sequence of shots and their angles, he failed to explain how the fourteen color photographs could support his argument.  In fact, we note that the affidavit Reger's trial counsel provided in connection with Reger's initial habeas application—which Reger attached to his amended petition in this case—stated:

> It was Mr. Reger who always insisted that he had acted in self-defense and that that was the defense he wanted to present on a not guilty plea.  I discussed with him the possible application of the lesser charge of Voluntary Manslaughter . . . .  A number of times prior to trial, and prior to his testimony during trial, I also discussed with Mr. Reger the fundamental difficulty that was posed by the results of the physical evidence and of the autopsy, which showed the deceased, who was not armed, had been shot four (4) times with Mr. Reger's rifle at different angles and distances.  I explained that the physical evidence made [an] argument of self-defense very

---

[17]Indeed, even assuming *arguendo* that the State did not disclose the photographs before trial and that the photographs constituted *Brady* material, Reger either waived any potential *Brady* violation claim or failed to show that any *Brady* error prejudiced him when he failed to request a continuance upon becoming aware of the photographs.  *See State v. Fury*, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding that a defendant's failure to request a continuance indicates that tardy disclosure of withheld evidence was not prejudicial for purposes of *Brady* violation claim); *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref'd) (holding that, as a general rule, the failure to request a continuance waives any *Brady* violation).

tenuous at best. However, Mr. Reger explained both to me and to [an investigator] at different times not only prior to but also during trial a sequence of events as to the actual shooting that would comport with the autopsy results. However, Applicant did not testify as to this particular sequence of events at his trial.

Because Reger merely speculates generally in his petition that the photographs are favorable and material, he has failed to plead facts establishing the second and third elements of his *Brady* claim.

Because Reger failed to plead facts establishing that the Appellees suppressed the photographs or otherwise committed a *Brady* violation, Reger has not established that the Appellees have a mandatory duty to produce the photographs. Thus, the trial court did not abuse its discretion in dismissing his suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.003(b)(2).

We overrule Appellant's first and third issues.

## B. Chapter 14 Discovery

In his second issue, Reger claims that the trial court abused its discretion by refusing to allow him to conduct discovery before dismissing his mandamus claim because mandamus proceedings are subject to discovery as in any other civil suit. Chapter 14 operates according to its own distinct procedures, and a trial court may dismiss a claim either before or after service of process—i.e., before an answer is filed—if it finds the claim is frivolous. Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a); *see Burnett v. Sharp*, 328 S.W.3d 594, 597 (Tex. App.— Houston [14th Dist.] 2010, no pet.). "[T]he applicability of chapter fourteen is not contingent on the defendant's satisfaction of *any* procedure rule." *McCollum v.*

22

*Mt. Ararat Baptist Church, Inc.*, 980 S.W.2d 535, 537 (Tex. App.—Houston [14th Dist.] 1998, no pet.). "This is consistent with the purpose of chapter fourteen which is 'to control the flood of frivolous lawsuits being filed in the courts of this State by prison inmates, consuming valuable judicial resources with little offsetting benefit.'" *Id.* (quoting *Hickson v. Moya*, 926 S.W.2d 397, 399 (Tex. App.—Waco 1996, no writ)). Further, if the trial court conducts a hearing on a defendant's motion to dismiss an inmate's suit under chapter 14, section 14.003(d) requires that the trial court "suspend discovery relating to the [inmate's] claim pending the hearing." Tex. Civ. Prac. & Rem. Code Ann. § 14.003(d). The trial court therefore did not abuse its discretion by dismissing Reger's suit before allowing him to conduct discovery. *See Pohl v. Livingston*, No. 03-06-00625-CV, 2008 WL 974785, *2 (Tex. App.—Austin, Apr. 10, 2008, no pet.) (mem. op., not designated for publication) (holding trial court did not err by suspending discovery in light of section 14.003(d)'s automatic suspension of discovery). We overrule Reger's second issue.

## V. Conclusion

Having overruled each of Reger's three issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER and MCCOY, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment)

DELIVERED: August 11, 2011